UNITED STATES of America,
Plaintiff-Appellee,

v.

Nazario GARCIA, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Adrian GARCIA, Defendant-Appellant.

Nos. 77–1056, 77–1071.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1977.

Decided Sept. 9, 1977.

Michael J. Guinan, Lawrence S. Galka, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., Robert W. Tarun, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

Appellants Adrian and Nazario Garcia, who are brothers, were convicted by a jury of violating 21 U.S.C. § 846 by conspiring together and with one Jorge Carrera to distribute and possess with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), between August 1 and August 23, 1976. Nazario [1] was convicted at the same trial on three indictment counts charging violations of § 841(a)(1) in two heroin distributions on August 19, 1976, and one on August 22, 1976. It is admitted that these distributions to Drug Enforcement Administration Agent Garcia, who was accompanied by a confidential informer named Hernandez, did in fact take place. As appellants' defenses and appellate arguments differ, and as both attack the sufficiency of the evidence to sustain their respective convictions, the facts will be discussed in the context of the arguments advanced.

I

Adrian's sole argument on appeal is that he never entered any drug conspiracy and that the evidence adduced does not

---

* The Honorable William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Because of the presence in the case of the two appellant Garcias and an agent of the Drug Enforcement Administration with the same last name, we will for convenience of reference herein refer to them as Adrian, Nazario, and Agent Garcia.

**414**

support the jury's determination to the contrary. Such a challenge bears a heavy burden. No assertion is made that the jury was improperly instructed on the necessary elements of conspiracy. It was the jury's function and, it scarcely needs saying, is not ours, to assess credibility and weigh the evidence. We must take the view of the evidence which most favors the Government, and if substantial evidence supports the jury's conviction, we will not reverse it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Tucker,* 552 F.2d 202, 210–11 (7th Cir. 1977).

Viewed in this light, the evidence discloses the following. On August 8, 1976, Adrian received a phone call from the informer Hernandez, whom he had never met and with whom he had never spoken. No specifically drug-related discussions occurred, but Adrian agreed to meet with Hernandez the following day to discuss "business." On August 9, Hernandez and Agent Garcia went to the trailer park at which the appellants Garcias lived. A brief conversation between Hernandez and Adrian, in which drugs were not mentioned, ensued. Adrian then introduced Hernandez to Nazario, and these two discussed the sale of heroin from the latter to the former, for about 20 minutes. During most of this time, Adrian stood with Hernandez and Nazario, saying nothing. Occasionally, Adrian walked away for a short time and then returned. The next day, a similar situation occurred, Hernandez and Nazario discussing drug sales in the presence of Adrian, who took no direct part in the discussion.

Adrian did not participate in any of the distributions with which Nazario was charged in this case. Despite conflict between Government witnesses, there was some testimony Adrian was seen in the trailer park area on August 22, when Nazario delivered one kilogram of heroin to Agent Garcia. Finally, when Adrian was arrested in his trailer that day, a search of his wallet revealed sixty dollars of prerecorded currency which had been paid to

Nazario on August 19 in a heroin transaction.

Adrian argues vigorously here that mere association with conspirators, knowledge of a conspiracy, and/or presence during conspiratorial discussions will not suffice to convict a man of conspiracy. Instead, he insists, there must at least be evidence to support the inference that the defendant in some way joined and participated in the conspiratorial scheme. We do not doubt that this is the law, *United States v. Quintana,* 508 F.2d 867, 879–81 (7th Cir. 1975); *United States v. Baker,* 499 F.2d 845, 847–49 (7th Cir. 1974), *cert. denied sub nom. Felts v. United States,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667; *United States v. Varelli,* 407 F.2d 735, 741–43 (7th Cir. 1969); *Turcott v. United States,* 21 F.2d 829 (7th Cir. 1927), but applying it to this case does not require reversal, because the Government proved two things which, if believed, take this prosecution out of the class of mere presence, association, or knowledge cases upon which Adrian relies.

First, it proved that Adrian received a phone call from a perfect stranger inviting him to discuss unspecified "business" the next day, and that upon meeting the telephone contact, Adrian discussed no business but turned the contact over to his brother, who then negotiated a heroin sale while Adrian observed it. We need not determine whether this fact alone would support an inference of participation in the conspiracy, however, for when combined with the second fact that Adrian had in his possession part of the proceeds of the conspiracy, the inference was definitely a permissible one. To be sure, Nazario testified that he had given the sixty dollars to one of his and Adrian's trailermates to pay his share of living expenses and that the trailermate in turn had given the money to Adrian to buy food supplies. The jury, however, was not obliged to believe this explanation, and apparently it made a choice, well within its province as trier of fact, not to do so. The Government's case against Adrian Garcia,

while less than overwhelming, was sufficient to support the conviction.[2]

## II

Nazario's defense at trial was entrapment, and he argues here that the Government failed to overcome that defense by proof beyond a reasonable doubt. Again, of course, we point out that our review of this challenge to evidentiary sufficiency is a very limited one.[3]

■ The Government entraps a defendant and precludes conviction when its agents prevail upon and induce him to commit a crime which he had no predisposition to commit. *See generally United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Although there remains room for a due process challenge to outrageous Government conduct instigating an offense, *Russell, supra*, 411 U.S. at 431–32, 93 S.Ct. 1637; *Hampton v. United States*, 425 U.S. 484, 491–95, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (Powell, J., concurring),[4] "entrapment" as a defense "is not of a constitutional dimension." *Russell, supra*, 411 U.S. at 433, 93 S.Ct. at 1643. Given the existence of Government inducement (which raises the question, but which does not itself foreclose prosecution, *see Sherman, supra*, 356 U.S. at 372, 78 S.Ct. 819; *Sorrells, supra*, 287 U.S. at 441, 53 S.Ct. 210) inquiry about

entrapment, as "definitively construed" in *Russell*, is "focused on the question of predisposition." *Hampton, supra*, 425 U.S. at 492, 96 S.Ct. at 1651 n. 2 (Powell, J., concurring); *id.* at 488–89 (opinion of the Court plurality). The line to be drawn is that "between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman, supra*, 356 U.S. at 372, 78 S.Ct. at 821.

■ Under these principles, we have no difficulty agreeing with appellant that his testimony raised the question of entrapment. He testified that he had never dealt in drugs before the incidents in question here, that he had a clean record without criminal involvement, that he was a hard working man attempting to support his family in Mexico but was at the pertinent times unemployed and desperate for money, that he initially refused to cooperate with Hernandez in the latter's search for drugs, and that only after two personal visits and four telephone calls in which Hernandez continued to "pester" him did he agree to try to find a drug source.

■ To argue, however, that this testimony establishes entrapment as a matter of law, as appellant does, goes too far. First, the jury was not obliged to believe the testimony. The verity that the trier of fact may and must make credibility determinations applies with full force to entrapment issues. *Masciale v. United States*, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958);

**2.** Nazario Garcia makes the related argument that, if Adrian's conviction were reversed, his conspiracy conviction should be as well, because it is, on the record, *possible* that the third alleged conspirator was a Government agent and a single person cannot commit the offense of conspiracy with an agent. Our conclusion here that Adrian's conviction should be affirmed disposes of this argument.

**3.** We assume at this point that the jury was adequately instructed on entrapment. Appellant's arguments that this was not so will be considered separately in part III, *infra*.

**4.** Justice Roberts' concurrence in *Sorrells*, 287 U.S. at 453, 53 S.Ct. 210, expressed the notion that the nation's courts must give no sanction to Government instigation of criminal activities

by entertaining prosecutions arising therefrom. This theory has frequently been asserted as the basis of the entrapment defense, and continues to command the support of some of the Justices, *see Hampton, supra*, 425 U.S. at 495–500, 96 S.Ct. 1646 (Brennan, J., dissenting), but in *Sorrells, Sherman, Russell*, and *Hampton*, a majority of the Court has consistently rejected it as the underlying theory of entrapment. The possibility of an independent challenge to such Government activity, based on due process, exists, as noted in the text, but has been invoked only rarely. *See, e. g., Greene v. United States*, 454 F.2d 783 (9th Cir. 1971). We think it too obvious to require discussion that the Government activity in this case was not so outrageous as to violate due process.

*United States v. Townsend,* 555 F.2d 152, 155–58 (7th Cir. 1977). Moreover, the jury was presented with specific evidence contradicting appellant's claim that he was not predisposed to deal in heroin. Appellant himself admitted that he told the informer Hernandez *during their first meeting* that he could write to sources in Mexico to obtain heroin. Hernandez testified to the same effect, adding that in this first meeting Nazario told him that he had "good contacts and good connections, and perhaps he would be able" to supply heroin, even in quantities as large as 100 kilos, and that Nazario estimated at that time a price per kilo. The jury could well have concluded that these were not the statements of an "unwary innocent," *Sherman, supra,* 356 U.S. at 372, 78 S.Ct. 819, initially refusing to involve himself in criminal activity. The Government characterizes this case, not unreasonably, as one in which the defendant claimed at first contact that he could deliver, and subsequently did. The jury's conclusion that appellant was predisposed to commit the offense was surely supportable by the evidence presented.

### III

 Nazario asserts two objections to the instructions given the jury, claiming that both improperly prejudiced his defense. In assessing these claims of error, we must recognize substantial discretion in the district court as to the specific wording of instructions, *United States v. Rajewski,* 526 F.2d 149, 160 (7th Cir. 1975). Our task is to determine whether the instructions, taken as a whole, fairly and adequately stated the law pertinent to the case. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States v. Isaacs,* 493 F.2d 1124, 1163 (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146.

 The first objection to the court's charge related to the workings of the grand jury. To put the matter in proper perspective we set out at some length a greater part of the charge, the challenged portion being the fourth and fifth paragraphs of the following:

You are going to take with you into the jury room the indictment in this case, and I want you to understand what its significance is, and what it is not.

An indictment is merely the formal method of initiating a case . . . .. It is not evidence of any kind against a defendant and it does not create any presumption or permit any inference of guilt to be drawn from the indictment, itself.

Some of you may know how a grand jury works. I will tell you.

A grand jury consisting generally of 23 members of your fellow veniremen when you came in on the first day were selected to serve on the November grand jury. Twenty-three of them. They listen to information presented by the government, not necessarily evidence because under the rules the grand jury may hear information which would not be admissible at a trial, but they hear information, and on the basis of the information they hear they make a determination whether or not there is probable cause to proceed further, to hold a trial, to find out whether or not in fact the defendant committed a crime.

They make no determination of the guilt of the defendant. They are not supposed to. They are supposed to be simply the first screening process by which a preliminary determination is made whether or not to go further with the case, to hold a trial.

The first people who are going to make any determination as to the guilt or innocence of these, are going to be you people. Nobody else has made that determination before.

So the fact that they have been indicted and the fact there is an indictment is significant to you in only one respect. It states the parameters of the charge or charges. It identifies what it is that the grand jury says you should decide with respect to whether or not the defendants are guilty or innocent.

So we give you the indictment, not because it represents any evidence at all,

but simply so you have before you what it is that is charged against these defendants so you can weigh the evidence in the light of the charge and my instructions, and decide whether or not the government has established the guilt of the defendants as charged in the indictment beyond a reasonable doubt.

No assertion is made that the above instruction was in any way inaccurate, but three claims of improper prejudice are before us. First, the appellant insists that only the first two paragraphs of the instruction should have been given because the remainder gives undue emphasis to the fact of the indictment. We disagree. In almost any criminal case, we think, the fact of the indictment has some emphasis. To the degree an uninstructed jury considers the matter, there is a real possibility that a charge leveled by a grand jury composed of its peers will weigh in the petit jury's balance on the side of guilt. The district court's instruction here was a fair, careful, and accurate attempt to avoid this inference by deemphasizing the fact of the indictment and limiting its proper role in the case. This we think it did more effectively than a mere statement than an indictment is not evidence and permits no inference of guilt, and more accurately than the summary instruction, not infrequently given, that the indictment may not be considered pertinent to the matter of guilt or innocence.

 The two remaining claims of prejudice are insubstantial. Appellant argues that reference to indictment as the "first screening process" invites the inference that "the innocent are screened out leaving the guilty to face trial." The instruction, in which the jury was explicitly told otherwise, is its own answer to that argument. Appellant also claims that advising the jury that the grand jury hears some "information" that would not be admissible at trial was error, for the jury "must have concluded" that the "missing" proof rebutting the entrapment defense was supplied to and accepted by the grand jury. Such attempted mind-reading of the jury is highly speculative. For one thing,

the district court's instructions make clear the differing functions of the grand jury, and the fact that only the Government presents information to it, and we consider it not at all obvious that a reasonable jury would have assumed that any defenses would even be raised, let alone rebutted, before the grand jury. Further, trial-inadmissible evidence that the grand jury may have heard as to the guilt of Nazario, aside from the entrapment aspect, could have had no proper bearing on the determination of guilt or innocence because the very assertion of the defense of entrapment necessarily admits the commission of the offense. Finally, for the reasons we have indicated above, we think it unlikely the jury would have found any need to speculate on grand jury proceedings to find rebuttal to the entrapment defense. In any event, the questioned instruction most surely did not invite them to do so, and the district court's instructions as a whole make manifest the jury's duty to decide the case on the basis of the evidence presented at trial. While we question whether telling the trial jury that the grand jury may hear matters not admissible at a trial was necessary to round out the picture, what was said to the jury in this respect was informationally and legally correct and we are not persuaded in the context in which it appears there could have been any negative impact whatsoever upon the jury's consideration of Nazario's defense of entrapment.

 Appellant also objects to the district court's instructions on entrapment. They began as follows:

We come then to the question of entrapment, which is Nazario Garcia's defense in this case.

He asserts that he was entrapped into committing the acts which the government charges in the four counts of the indictment in which he is named. *This is related to the whole question of his knowledge and his intent.* [Emphasis added.]

Knowledge and intent had been defined by the court immediately prior to this instruction. Appellant argues that knowledge and

intent to commit the offense in question are entirely distinct from the matter of entrapment, for one who asserts entrapment necessarily admits committing the offense, including whatever mental state is necessary to constitute the offense. While we agree, as we earlier herein indicated, with the latter proposition, we cannot agree that entrapment is entirely distinct from knowledge and intent. To be sure, the focus of inquiry is different. The question as to entrapment is not whether the defendant did the proscribed act with the requisite state of mind, but, as we have seen, the heart of the entrapment issue is predisposition, which is, itself, a "subjective mental state." *United States v. Townsend, supra,* 555 F.2d at 155 n. 3. This is precisely what the district court was telling the jury. The instructions continued, in terms the adequacy of which are not questioned here, by explaining that the key to the problem was whether the defendant lacked a "previous intent or purpose to violate the law" before being solicited to do so by Government agents, and properly pointed out that if he was ready and willing to do so, the fact that Government agents provided an opportunity does not constitute entrapment. The context clarified any confusion that might have been engendered if the comment about entrapment being related to knowledge and intent had stood alone. The same thing is true of the district court's use of the word "knowingly" in his concluding remarks about entrapment, to which appellant also objects [5] and of its recapitulation of mental state issues in which the jury was charged that it must be satisfied that the defendants knowingly and intentionally "engaged in an illegal activity *and* they were not induced or persuaded to do so by the government." [Emphasis added.] No reversible error was committed in giving these instructions.

5. The district court judge told the jury:
 . . . if the evidence leaves you with a reasonable doubt whether Nazario Garcia had the previous intent or purpose to commit any of the offenses which are charged here . . . *and did so only because he was* induced or persuaded by some officer of the

## IV

 Nazario's final argument on appeal is that the Government's failure to republish schedules of controlled substances under 21 U.S.C. § 812(a) resulted in the crimes being charged being unenforceable and unprovable. This court has recently rejected that legal argument in *United States v. Pedote,* 557 F.2d 596 (7th Cir. 1977), and that decision is controlling here.

For the reasons stated herein, the judgments of conviction are

**AFFIRMED.**

government to do so, then it is your duty to acquit him because it is the government's burden to establish beyond a reasonable doubt that he knowingly, not as a result of entrapment or inducement, or persuasion by the government, committed these offenses.