OPINION
GARY M. BEAUDRY, Chief Justice.
PROCEDURAL HISTORY
On May 28, 1997, the Fort Peck Tribal Prosecutor filed a criminal complaint against Judy Red Boy. The complaint stemmed from an arrest of Judy Red Boy on May 27, 1997, for Violation of Child Neglect, Title III, Section 214(d) of the Fort Peck Assiniboine and Sioux Tribes, Comprehensive Code of Justice. A jury trial ensued in the Fort Peck Tribal Court on August 6, 1997. Mr. Marvin Youpee appeared as Tribal Prosecutor and Mr. Barry Bighorn appeared as Defense counsel. The Honorable Judge Rita Weeks presided over the trial.
The Defendant was found guilty and a separate sentencing hearing was held before Judge Spotted Bird. He sentenced the defendant to sixty (60) days in jail and imposed a Three Hundred ($300.00) fine, suspended for ninety days and placed the defendant on probation. Additionally, Judge Spotted Bird imposed jury costs and stayed those costs. (This court is not reviewing the sentence imposed).
The Defendant filed a Notice of Appeal on August 11, 1997 asserting, among other things, that the prosecution failed to carry the burden of proof, beyond a reasonable doubt. Upon review of the Notice of Appeal, and the lower court record, this court granted the appeal and requested briefs and heard oral arguments. Mr. Bryce M. Wildcat submitted a brief and argued on behalf of the Tribal Prosecutor’s Office, and Mr. Emmett Buckles of the Public Defender’s Office argued on behalf of the Defendant/Appellant herein, Judy Red Boy.
FACTS
The facts in this case indicate that: “where there is smoke, there is [no] fire;” but, “where there is alcohol there is neglect.”
At trial, Officer Bruce Bauer of the Wolf Point Police Department testified that while on patrol the evening of May 27, 1997, he received a page that there was a possible house fire in the west housing area in Wolf Point. He responded and as he arrived at the scene, children in the vicinity yelled at him exclaiming that there was a fire at the Red Boy’s house. As he went to knock on the front door, he passed by the living room window and could see smoke inside the house. When nobody answered, he pushed open the front door and proceeded inside inspecting for occupants. Officer Bauer testified that as soon as he opened the front door he noticed “the house was filled with smoke,” and upon opening the door, the smoke came out of the house. When he entered the house, he couldn’t see any flames and he suspected something was smoldering. As he passed through the living room, he saw a child laying on a chair, so he picked up the child and turned around and ran outside. In his opinion, he felt that the child was at risk for smoke inhalation and was in danger because of the intense smoke in the house. He estimated the child to be four to six years old. When he got outside with the child, he handed the child to Officer John F. Summers, a Tribal Police *150 Officer, who was standing on the side walk talking with Judy Red Boy.
Officer Summers then returned to the house searching for other occupants and found none. Officer Bauer checked all of the bedrooms and then exited the house to get a breath of fresh air. Then he went back into the house and inspected the kitchen area. He so found that the back door was open. Apparently there was a great deal of smoke in the house but no fire.
Prosecution’s only other witness testifying at trial was Officer John F. Summers. Officer Summers testified that he was the second officer on the scene behind Bruce Bauer. Officer Summers did enter the house on two different occasions for investigative purposes while he was at the scene. He expressed his opinion on the witness stand that the child was in danger subject to health risk as a result of smoke inhalation. It was determined that the smoke was caused by a cooking pot left on the top burner of the stove and that there was no fire damage done to the house or the occupants.
Without objections to hearsay, Officer Summers testified that the ambulance crew and Fire Department thought that the child was in danger as a result of the smoke.
While Officer Summers was at the scene, Robbie War Club, an off duty Criminal Investigator for the Fort Peck Tribes approached him and inquired whether Judy Red Boy was possibly intoxicated. Officer Summers then went to the patrol car and spoke with Judy Red Boy and only then noticed she smelled like alcohol or an intoxicating beverage. He asked her if she had been drinking and she answered in the affirmative, she stated that she had consumed three or four quarts of ninety cents ($.99) kind.
It was Officer Summers impression that as a result of the consumption of alcohol Judy Red Boy became intoxicated and passed out causing the pot to over cook and fill the house with smoke. Further, he testified that she was not aware of the [fire] when he initially approached her at the scene. He asked her “where’s the fire!” she responded “what fire?” Coincidentally, when she said “what fire,” Officer Bauer, carrying her grandson, came out of the front door, a few feet from where she was standing, allowing smoke to flow out of the house.
Officer Summers testified that when questioning Judy Red Boy she admitted that she had been drinking, and at the time she had left her two grandsons in the care of a relative and that she had picked up the children prior to the incident.
Officer Summers also testified that Judy Red Boy stated that a pot must have burned and she had fallen asleep for a little while.
Officer Summers testified that because Judy had been drinking and put her grandsons, lives in danger, while they were in her care, he arrested Judy for Child Neglect.
Judy Red Boy’s testimony, in her own defense, indicates a set of facts not substantially different from Officers Summers and Bauer. She stated that around 6:00 p.m., she started cooking. It was her intention to make chicken and rice soup, and the pot she used was a shallow pot. After she had placed the chicken in the pan, she began watching TV, and while watching TV, the pot began to smoke. She testified that she then turned off the stove and took the pot outside and opened the doors and windows. At the time, she did not feel the smoke was a danger to herself or to her grandchildren. While she was standing outside, she heard the fire whistle and she said she was wondering where the fire *151 whistle was and why everybody was pulling up at her house. She said it scared the heck out of her. She testified that when Officer Bauer arrived on the scene, he asked her, “where’s the fire?” and she said “there is no fire.”
This appeal was brought contending the prosecution failed to carry the burden of proof. This court in examining these facts finds that the prosecution did carry the burden of proof, beyond a reasonable doubt. However, our review goes forward in determining whether the defendant’s due process lights were violated, to that determination we review the following set of facts.
In addressing the jury panel, Judge Weeks stated the following:
“Please listen closely as I ask these questions of you. First, the defendant is on trial, today, charged with the offense of Neglect of a Child in violation of Title III, Chapter 2, Section 214(d) of the Fort Peck Tribal Comprehensive Code of Justice.”
Judge Weeks then read the complaint to the jury panel as follows:
“The complaint filed in reference to this matter alleges the following: That on or about the 27th day of May, 1997, in the Fort Peck Tribal Jurisdiction, Officer Summers was dispatched to 809 West Cascade in Wolf Point, on a report of a house fire at Judy Red Boy’s house. It was also reported that Judy may have passed out in her house and she had her two grandsons with her. Upon arrival, Wolf Point City Police Officer Bruce Bauer, was at the scene. Officer Summers asked her where the fire was and she replied, ‘what fire? There’s no fire here.’ Officer Bauer came out of the front door of Judy’s house, carrying her grandson, CF, DOB 8/17/92. Officer Summers could see smoke corning from the door that Officer Bauer had just exited. Officer Bauer then ran back inside the residence to see if any more children were inside. It appeared as if the fire had started in the kitchen area because most of the smoke was inside the kitchen and living room areas. Judy’s other grandson, BF, DOB 7/6/91, was also at the residence in Judy’s care. Judy’s breath had a strong odor of alcohol beverage. Officer Summers asked her if she had been drinking and she said ‘yes.’ Officer Summers asked her how much she had been drinking and she said about three or four quarts, the. 99 kind. Because Judy had been drinking and because she put her grandsons lives in danger while they were in her care, Officer Summers arrested Judy for Child Neglect, for failing to provide proper supervision of the grandchildren as a reasonable prudent parent would provide in the same or similar circumstances. Judy was advised of her tribal rights, ... Signed by the complainant and subscribed and sworn to before a Judge of the Fort Peck Tribal Court.”
Judge Weeks stated to the jury:
“Now, to this charge, the Defendant has plead not guilty. Throughout the trial, she is presumed to be innocent until her guilt is proven beyond a reasonable doubt. The Tribe has the burden of proving this guilt. Do you understand that the Defendant has these rights? Do you agree with them? Is there anyone that doesn’t understand what the rights are of the Defendant?”
Additionally, at the end of the trial, Judge Weeks gave jury instruction to the jury before they deliberated. Among her instructions, she stated:
“The complaint itself is not evidence, but is the charge which has been made against the Defendant. The law presumes that a person charged with a crime is innocent until her guilt is estab *152 lished beyond a reasonable doubt. The Defendant is entitled to the benefit of this presumption until it has been overcome by the facts establishing the Defendant’s guilt beyond a reasonable doubt. A reasonable doubt is such a doubt as would cause a reasonable and prudent person to pause and hesitate to act upon the truth of the matters charged. The jury should patiently weigh and consider the testimony and bring to bear upon it, the exercise of common sense and judgment as reasonable men and women. And if, after considering the evidence, you can say having an abiding of the truth of the charge then you’re satisfied beyond a reasonable doubt ...”
ISSUE
This court raises the issue sua sponte “Whether the reading of the complaint to the Jury, in its entirely, by the Tribal Court, constitutes prejudicial error warranting reversal of the verdict?”
DISCUSSION
The Indian Civil Rights Act, 25 U.S.C. 1302 provides that “No Indian Tribe in exercising powers of self government shall ... deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation ... deny to any person accused of an offense punishable by imprisonment the right, upon request to a trial by jury ...” This court takes the Indian Civil Rights Act on its face to be constitutionally correct and assures due process to all Native Americans in Tribal Court.
However, the above quoted section on its own does not provide fair play and substantial justice. Indeed the reading of the complaint including the reading of the statute which had been violated and the reading of the investigator’s account of the facts, may, lacking further instruction, unduly prejudice a defendant in the minds of the jury. To offset the undue prejudice here, the Honorable Rita Weeks instructed the jury that the facts in the complaint were not evidence and that the facts in the complaint must be proven beyond a reasonable doubt. Additionally, immediately after the reading of the complaint, Judge Weeks instructed the jury that the defendant has plead not guilty, and that the defendant is presumed to be innocent until her guilt is proven beyond a reasonable doubt. Further, prior to the jury deliberations, the Honorable Judge Rita Weeks instructed the jury: “The complaint, itself, is not evidence, but is the charge which has been made against the defendant. The law presumes that a person charged with a crime is innocent until her guilt is established beyond a reasonable doubt.” This court finds that Judge Weeks’ instruction immediately after the reading of the complaint to the jury and Judge Weeks, jury instructions prior to deliberations were sufficient to abate any undue prejudice occurring as a result of the reading of the complaint.
Additionally, in review of the testimony of Officers Bauer and Summers, there is nothing in the complaint which was not disseminated by sworn direct and cross examination. For such reason, any weight given to the facts and details by the reading of the complaint added nothing to the details described by Officers Summers and Bauer at trial. In review of the complaint and testimony, this Court finds that each element of the offense was proven at trial, and the reading of the complaint was not unduly prejudicial.
 This court’s decision is based on review of Judge Weeks’ exercise of due process in light of the prevailing rules of *153 law. Model Jury Instructions clearly indicate that an indictment is not evidence.
“. .. as I told you at the beginning of the trial, an indictment is simply an accusation. It is not evidence of anything. To the contrary the defendant is presumed to be innocent. Thus, the defendant, even though charged, begins the trial with no evidence against him. The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the government proves, beyond a reasonable doubt, each essential element of he crime charged ...” (See Manual of Model Criminal Jury Instruction for the District Courts of the Eighth Circuit, Instruction Number 3.06 1992 See also, Instructions 3.05,3.06, and 3.08.)
The Ninth Circuit Jury Instruction reads:
“this is a criminal case brought by the United States Government. The government charges or accuses the defendant with (crime charge). The charge against the defendant is contained in the indictment. The indictment is simply the desci'iption of the charge made by the government against the defendant; it is not evidence of anything ...” (See manual of Model Criminal Jury Instructions for the Ninth Circuit, Instruction 1.02(1992)).
The leading case pertaining to the reading of indictments is United States v. Garcia, 562 F.2d 411, 417 (7th Cir.1977), wherein the Appellate Court wrote:
“In almost any criminal case, we think, the fact of the indictment has some emphasis. To the degree an uninstructed jury considers the matter, there is a real possibility that a charge leveled by a grand jury composed of its peers will weigh in the petit jury’s balance on the side of guilt.”
Also in United, States v. Polowichak, 783 F.2d 410, 413 (4th Cir.1986), the Fourth Circuit wrote:
“The well nigh universal rule is that, subject to a proper covering instruction, whether the indictment should be given to the jury for use during its deliberations is within the discretion of the trial court.” (citations omitted).
This court finds guidance in the above Circuit Court decisions concerning indictments and complaints being read or submitted to the jury prior to deliberations. It is clear to this court that the prevailing rule is that: With the proper instructions given prior to deliberation, and given in conjunction with the reading of the complaint, any inherent prejudicial effect associated with the reading would be adequately offset by the instructions and not subject to reversal.
In this case it is our holding that the reading of the complaint at the beginning of the trial along with the court’s instructions after that reading, and again, the court’s instructions prior to deliberations were adequate to offset any inherent prejudicial effect. For such reason, the lower court’s decision is hereby. Affirmed.
CONCUR: GARY SULLIVAN, Associate Justice.
DISSENT: CARROLL J. DeCOTEAU, Associate Justice.