In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-2763

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

*v.*

JOSHUA W. EADEN

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:17-cr-00025 — **Richard L. Young**, *Judge*.

---

ARGUED SEPTEMBER 27, 2021 — DECIDED JUNE 23, 2022

---

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Over a three-year period, Joshua Eaden defrauded his employer and its business partners of more than $200,000. Eaden's crimes eventually caught up with him, and a jury convicted him of seventeen counts of mail and wire fraud. On top of 46 months' imprisonment, the district court ordered Eaden to pay restitution to his victims and to forfeit his ill-gotten gains.

Eaden argues on appeal that he is entitled to a new trial for two reasons. First, he contends that the district court deprived him of a fair trial by making prejudicial comments to prospective jurors during voir dire. Second, he argues that the district court wrongly admitted a lay witness's opinion testimony regarding a subset of his fraud charges. And if not granted a new trial, Eaden seeks at least the reduction of his forfeiture and restitution obligations, which he contends were miscalculated. Yet Eaden failed to raise these objections with the district court, meaning we review only for plain error. The government concedes (and we agree) that two of Eaden's restitution and forfeiture arguments merit relief, so we reduce Eaden's financial obligations accordingly. But when it comes to Eaden's remaining claims, we see either no error or nonobvious error; we affirm as to those.

I

From 2002 to 2016, Joshua Eaden worked for Best One Tire, a tire store owned by Southern Indiana Tire, Incorporated (SIT). He eventually became Best One's manager, but from 2014 to 2016 he abused that position by defrauding SIT and its business partners of more than $200,000. This fraud took two forms. First, Eaden falsely inflated the profits at his store (to obtain unearned performance-based bonuses) by billing SIT's largest customer—Gibson County Coal—for products it did not purchase. Second, Eaden submitted false claims to a rewards program sponsored by tire manufacturer Bridgestone Firestone, through which Best One's employees could claim gift cards and other prizes for selling Bridgestone tires.

In early 2016, a community member's tip alerted SIT's CEO to Eaden's misdeeds. Police and internal investigations

soon followed. On the internal side, SIT hired forensic accounting firm BKD to assess the scope of Eaden's overbilling scheme. To that end, BKD produced a report concluding that Eaden had billed Gibson County Coal for more than $180,000 in never-received products, netting Eaden more than $47,000 in unearned bonuses. Additionally, SIT forwarded Eaden's Bridgestone rewards program records to Bridgestone representative Don Anderson, who upon review found that more than 75 percent of Eaden's submitted claims contained false information.

With his fraud now uncovered, Eaden faced a 23-count indictment alleging multiple fraudulent schemes, including those just described. Although he was eventually acquitted on six counts, the jury convicted him of the remaining seventeen. At sentencing, the district court imposed 46 months' imprisonment, three years of supervised release, and ordered restitution of $244,673.00, as well as the forfeiture of all Eaden's bonuses from 2014 to 2016, which totaled $88,106.78. Eaden now appeals, contending that he is entitled to a new trial or, failing that, at least to reduced forfeiture and restitution obligations.

## II

We note from the outset that Eaden has (at a minimum) forfeited his claims by failing to raise them with the district court. But we needn't decide whether he has crossed the line into waiver; the government concedes that two of Eaden's arguments merit relief, and the standard of review makes no difference for the others. We therefore assess Eaden's claims for plain error, meaning he can obtain relief only by demonstrating: (1) an error (under whatever standard of review would apply had the issue been preserved); (2) that is plain;

(3) that affected his substantial rights; and (4) that, if not corrected, would impugn the fairness, integrity, or public reputation of judicial proceedings. *United States v. Butler*, 777 F.3d 382, 388 (7th Cir. 2015). We begin with Eaden's arguments for a new trial and then move to his restitution and forfeiture challenges.

A

Eaden contends that the district court deprived him of a fair trial in violation of the Fifth Amendment by informing prospective jurors during voir dire that a grand jury had issued Eaden's indictment based on probable cause, which the district court defined as meaning "it's probably true that [Eaden] had some connection with criminal activity[.]" In Eaden's view, this definition predisposed the petit jury to find him guilty and carried the government halfway to the goal line in proving his guilt beyond a reasonable doubt. And so, he insists, retrial is necessary.

Yet this argument misses the mark. For starters, Eaden ignores the broader context of the district court's comments. Although the district court undeniably invoked the "probably true" language that Eaden challenges on appeal, it immediately dispelled any notion that the grand jury's finding had some bearing on Eaden's guilt or innocence. Just moments after that unfortunate utterance, the district court inquired of a potential juror: "the fact that Mr. Eaden has been indicted … does that mean he's guilty?" When another potential juror replied that it did not, the district court confirmed—"[t]hat's exactly right. … he's just exercising his rights to a trial by jury." In an exchange with another venire member, the district court highlighted that "probably" wouldn't suffice for the petit jury's guilt-or-innocence determination:

> COURT: I mentioned the word "probable cause." That's a burden of proof as well, all right. The defendant probably had some connection to criminal activity. … [I]f you come back, after listening to all the evidence in this case, and you think: Well I think the defendant probably committed this crime, is that enough to convict?
>
> PROSPECTIVE JUROR: I would say no.
>
> COURT: Right. Probably tells you what? What's the word "probably" tell you?
>
> PROSPECTIVE JUROR: That there might be doubt that he didn't do it.
>
> COURT: Could be, could not be, right? Do we convict people and take away their liberty based on could be, could not be?
>
> PROSPECTIVE JUROR: I would hope not.
>
> COURT: Right. Exactly. We don't do that … .

Moreover, the district court took great pains to impress upon the jurors—both prospective and actual—that the government bears the full burden of proof at trial, notwithstanding the issuance of an indictment. It stated during voir dire, for instance, that "the fact that someone's been charged with a crime … [is] not evidence of their guilt," and admonished the venire that Eaden maintained a "cloak of innocence" despite his indictment. An exchange with one prospective juror is illustrative:

COURT: [W]hat does [Eaden] have to do in this case to prove to you that he is innocent of these charges?

PROSPECTIVE JUROR: He really doesn't have to prove his innocence. …

COURT: You mean that [Eaden] can sit here throughout the entire trial, not say one thing, not present any evidence, not do one darn thing … ?

PROSPECTIVE JUROR: Yes.

COURT: You're exactly right.

Finally, the district court's end-of-trial instructions were unimpeachable. They reminded the jury that an indictment is not evidence, that it "does not even raise a suspicion of guilt," and that Eaden was presumed innocent until proven guilty.

Trial judges have substantial discretion in conducting voir dire, and we interfere only where there has been "a clear abuse of that discretion[.]" *United States v. Betts-Gaston*, 860 F.3d 525, 530–31 (7th Cir. 2017). One of our prior decisions illustrates that the district court did not abuse its discretion in this case. In *United States v. Garcia*, the defendant challenged the district court's jury instructions, which described the grand jury as the "first screening process" in the criminal justice system. 562 F.2d 411, 417 (7th Cir. 1977). Yet we required only that the instructions, "taken as a whole, fairly and adequately stated the law pertinent to the case." *Id.* at 416. Because the instructions, viewed holistically, "ma[d]e manifest the jury's duty to decide the case on the basis of the evidence presented at trial," we held in *Garcia* that the district court had not erred. *Id.* at 417.

Despite the somewhat different context (voir dire versus jury instructions), the same conclusion is appropriate here. The district court carefully cabined its discussion of the grand jury's function, emphasizing repeatedly that Eaden's indictment—even if it meant he "probably" had some connection with criminal activity—was not evidence of guilt, that the government bore the full burden of proving him guilty beyond a reasonable doubt at trial, and that Eaden himself bore no burden at all. Considering these extensive efforts, we cannot see how the jury could misunderstand the government's burden of proof, regardless of the district court's "probably true" utterance during voir dire.

Although we are confident the jury understood its duty in this case, we nonetheless take this opportunity to remind district courts that comments about the grand jury are usually unnecessary and should be avoided. "[T]he fact of the indictment has some emphasis" in virtually any criminal case, *id.*, but that fact warrants no comment in the ordinary case beyond the typical admonition that the indictment is not evidence of guilt or of anything else, as the district judge rightly stated. The grand jury's finding of probable cause and decision to return an indictment is meaningless at trial and need not be mentioned by the court. In fact, the safer course is to redact any reference to the grand jury's role, as is commonly done. But that the district court did not take that course in this case is not a basis for a new trial.

B

If denied retrial for all counts, Eaden seeks a redo at least as to counts 17–23 (those related to the Bridgestone rewards program) because he believes that the district court erred by admitting unhelpful witness testimony from Bridgestone

representative Don Anderson in violation of the Federal Rules of Evidence. The parties agree that Anderson testified as a lay (rather than expert) witness, meaning that the admissibility of his testimony was governed by Federal Rule of Evidence 701, which requires that a lay witness's opinion testimony be: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.

Anderson's testimony focused on Eaden's submissions to the Bridgestone rewards program's online claims system. This system enabled salespersons like Eaden to obtain points redeemable for gift cards and other rewards by inputting certain required information, such as the quantity and type of tire sold, the purchaser's identity, the date of sale, and the relevant invoice number. At trial, Anderson testified that, in reviewing over 200 such submissions from Eaden, he discovered factual inaccuracies in more than 75 percent. Along the way, Anderson described these inaccuracies as "fraudulent," meaning (in his view) that they could not have resulted from "simple clerical errors." Eaden homes in on the term "fraudulent," contending that Anderson's testimony provided only the bare legal conclusion of "fraud" without being helpful as Rule 701 requires.

Our precedents have repeatedly upheld a witness's use of the term "fraudulent" when testifying in fraud cases. In *United States v. Locke*, for instance, we upheld lay witness testimony that the defendant's submissions to a loan provider (the witness's employer) had been "fraudulent," in the sense that they would have been denied had they been accurate. 643 F.3d 235, 237–38 (7th Cir. 2011). We viewed such testimony as

helpful under Rule 701 because it helped establish a key element—materiality—of the fraud charges pressed by the government. *Id.* at 241. In the same vein, in a real estate fraud case we upheld a witness's use of the term "fraudulent" to describe home appraisal reports submitted by the defendant. *United States v. Owens*, 301 F.3d 521, 527 (7th Cir. 2002). The *Owens* defendant insisted that this amounted to state-of-mind testimony regarding his intent, which is disallowed by Rule 704(b). *Id.* Yet we disagreed, concluding that "fraudulent" as used in context applied only to the reports themselves, rather than to the ultimate issue of the defendant's intent. *Id.* No one disputed that the testimony was helpful: it went directly to materiality.

*Locke* and *Owens* show why Anderson's testimony was properly admitted. In describing Eaden's submissions as fraudulent, Anderson was not addressing Eaden's mental state or the ultimate question of fraud. Instead, he was expressing with a layperson's vernacular that those submissions were false, with the further indication that, in his view, that falsity could not have resulted from mere negligence. This testimony was helpful under Rule 701. To prove Eaden's fraud charges, the government needed to show that his submissions were both intentional and false. Anderson's testimony touched on both considerations. In addition, Anderson's testimony was rationally based on his own perceptions from reviewing Eaden's Bridgestone claim submissions, and Eaden does not contend that Anderson's testimony was based on specialized knowledge. It therefore satisfied Rule 701's three requirements and was properly admitted.

C

Eaden's final arguments all pertain to the restitution and forfeiture amounts assessed by the district court. The government concedes that two of these arguments are meritorious, and we reduce Eaden's financial obligations accordingly. But for the remainder we find that any error is not plain and therefore affirm. We consider each argument in turn.

1

Eaden asserts that the district court erred in ordering him to pay $189,709 in restitution to SIT—the same amount that SIT repaid to Gibson County Coal to remedy Eaden's over-billing. In fraud cases like Eaden's, restitution is required by the Mandatory Victim Restitution Act for any victim "directly harmed by the defendant's criminal conduct." 18 U.S.C. §§ 3663A(a)(1)–(2), (c). But (as Eaden correctly notes) restitution is limited solely to "actual losses caused by the specific conduct underlying the offense." *United States v. Meza*, 983 F.3d 908, 918 (7th Cir. 2020).

Eaden argues—and the government concedes—that the $189,709 was not a loss to SIT. Instead, SIT merely repaid unearned funds that it had obtained from Gibson County Coal solely by reason of Eaden's fraud. The government has never argued, either at trial or on appeal, that this amount was a loss to SIT, and so it appears that the district court had no basis for ordering this amount as restitution. Consequently, we accept the government's concession on this issue and modify the restitution order to reduce Eaden's financial obligations by $189,709. See, e.g., *United States v. Oliver*, 873 F.3d 601, 609 (7th Cir. 2017) (directly modifying district court's restitution order).

2

Eaden also contends that the district court erred in ordering him to forfeit all the performance-based bonuses he was awarded from 2014 to 2016, which totaled $88,106.78. Civil forfeiture, like restitution, is authorized by statute and is limited to "the gross receipts obtained [by mail or wire fraud]." 18 U.S.C. § 981(a)(1)(D). BKD's forensic accounting report attributed $47,288.97 in bonuses to Eaden's overbilling scheme yet said nothing about the remaining $40,817.81. Because none of the evidence presented at trial or sentencing attacked the validity of Eaden's bonuses beyond the $47,288.97 indicated in BKD's report, the government concedes that Eaden's forfeiture obligation should be reduced by $40,817.81. As with Eaden's restitution arguments, we accept the government's concession on this point and reduce Eaden's forfeiture order by $40,817.81. See *Oliver*, 873 F.3d at 609.

3

Eaden asks us to further reduce his forfeiture and restitution amounts as they relate to his bonus payments, which in his view BKD attributed excessively to fraud. The size of Eaden's bonuses depended, in part, on his store's net profits; BKD determined that, because of Eaden's fraud, those profits had been inflated by $332,803.68, netting Eaden $47,288.97 in unearned bonuses. But Eaden contends that this calculation is an overestimate because it takes into account profits that, although deemed fraudulent by BKD, were not attributable to the overbilling scheme for which he was convicted, instead being associated with other schemes for which he was either acquitted or never charged. In support, Eaden points to other portions of BKD's forensic accounting report, which

designate $168,572.47 as the overstated net profits attributable
to the specific conduct for which Eaden was convicted. In es-
sence, Eaden argues that the district court and government
erred in relying on BKD's topline fraud calculation with re-
spect to Eaden's bonuses—$47,288.97—without drawing se-
lectively from BKD's report to exclude the underlying profits
attributable to never-proven fraudulent schemes. But while
Eaden might be correct, the plain error standard permits relief
only where the error is plain, and any error here is not.

We've said that an error is plain where it is "clear" or "ob-
vious." *United States v. Burns*, 843 F.3d 679, 687 (7th Cir. 2016).
Yet this definition leaves unanswered a key question: Plain to
whom? The answer, although not always explicit in our prec-
edents, is that the error must be plain to us on appeal, rather
than to those involved in the trial process. See *id.* ("We have
never required … that the error be obvious to the district
court[.]") This answer has important implications in this case.
As an appellate court, legal errors are in our wheelhouse, and
so we've reversed where an error was "obvious under the
law" although not obvious below. *Id.*; see also *United States v.
Jenkins*, 772 F.3d 1092, 1098 (7th Cir. 2014) (plain error where
district court, relying on PSR, calculated Guidelines sentenc-
ing range by factoring in prior conviction under statute that
had been deemed unconstitutional). Factual errors, by con-
trast, tend to be more obscure on appeal. See, e.g., *Gall v.
United States*, 552 U.S. 38, 51–52 (2007) (noting that the district
judge "is in a superior position to find facts and judge their
import [for sentencing purposes]", and that district courts
"have an institutional advantage over appellate courts in
making these sorts of determinations"). For that reason, we've
held that an error is not plain where it is "subtle, arcane, de-
batable, or factually complicated." *United States v. Pierson*, 925

F.3d 913, 922 (7th Cir. 2019), cert. granted, judgment vacated on other grounds, 140 S. Ct. 1291 (2020)

The error Eaden asserts is of the latter sort. He argues that BKD's overpaid-bonus calculation overestimates his restitution and forfeiture obligations because it takes into account profits derived from never-proven schemes. Yet he cannot tell us the precise figure by which his restitution and forfeiture orders should be reduced (setting aside, of course, the government's concession regarding part of his bonus payments). Nor does Eaden dispute that the district court relied in part on a topline number explicitly provided by BKD's forensic accounting report—$47,288.97—in calculating these obligations. This is, as our cases say, a "subtle … [and] factually complicated" issue, *id.*, based on intricate accounting calculations, and therefore any error is not plain under our precedents.

4

Last, Eaden argues that the district court erred in ordering him to repay the entire $7,676 he obtained from the Bridgestone rewards program. In making this argument, Eaden once again attacks the testimony of Don Anderson, who indicated that he reviewed more than 200 of Eaden's submissions to the Bridgestone rewards program and found that, of those, more than 75 percent contained inaccuracies. Eaden faults this testimony in two respects: first because Anderson testified that "more than" 75 percent of the entries contained inaccuracies, rather than 100 percent, and second because Anderson reviewed only roughly half of Eaden's submissions to the rewards program. As Eaden sees it, this evidence is too thin to deem all of his rewards restitution-worthy.

Yet as with Eaden's preceding bonus arguments, any error here is not plain. The district judge had evidence before him that more than 75 percent of the Bridgestone submissions reviewed by Anderson contained false information of a nontrivial nature. For all we know, "more than" 75 percent—which indicates that *at least* 75 percent were false—could have been 100 percent; Anderson's testimony never ruled out that possibility. Beyond that, the district judge could have also inferred that Bridgestone would have denied all rewards to Eaden, even for legitimate claims, had it known of his fraud. This is enough to place any error here in the camp of subtle and factually complicated, short of what the plain error standard requires.

*        *        *

We accept the government's concessions on Eaden's restitution and civil forfeiture arguments, and so modify the district court's judgment, reducing those obligations by $189,709 and $40,817.81, respectively. The judgment is otherwise AFFIRMED as modified.