In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2160

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TOMAS LEISKUNAS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-CR-807—**Robert W. Gettleman**, *Judge*.

ARGUED DECEMBER 2, 2010—DECIDED SEPTEMBER 6, 2011

Before EASTERBROOK, *Chief Judge*, and MANION and
WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Tomas Leiskunas, a participant
in a major mortgage fraud scheme, was charged
with committing wire fraud as part of that scam. His
role was to act as a "straw", or fake, buyer of seven prop-
erties, and to cause $4,473,161.55 to be transferred
from unwitting mortgage companies to their banking
partners. Ultimately, as part of the scheme, he received

$90,000 from his co-schemers. He pled guilty, and was sentenced to 37 months' imprisonment, which was the lowest end of the guideline range. He was also sentenced to two years of supervised release, and ordered to pay $1,792,000 in restitution.

Leiskunas appeals, arguing that his sentence should have been lowered because of his substantial assistance to the government, but we reject this argument because the district court acted within its discretion in considering, and rejecting, Leiskunas's assertion of substantial assistance. Leiskunas also argues that the court erred when it applied a loss amount of $1,792,000 to him without explanation. We agree that the court should have explained its rationale in attributing a loss amount to Leiskunas. Finally, Leiskunas argues that his sentence should have been modified to reflect the guidelines' minor role adjustment. We conclude that the court erred in interpreting the minor role adjustment guideline when it stated that an act otherwise deemed minor could, if repeated, necessarily preclude the adjustment, and that a person playing a necessary role cannot play a minor role. We remand to give the court an opportunity to explain the reasonably foreseeable financial loss amount that should be attributed to Leiskunas as a result of his crime, and to consider Leiskunas's minor role argument as discussed in this opinion.

## I. BACKGROUND

In 2006, at 26 years old, Tomas Leiskunas had a minor criminal history and at least two aliases. He was

charged in a one-count indictment with being a willing participant in a mortgage fraud scheme. The indictment alleged that beginning no later than September 2006 and continuing until approximately November 2006, Leiskunas and others knowingly participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions. The indictment also charged that on or around November 2, 2006, for the purpose of executing the scheme, Leiskunas knowingly caused to be transmitted by means of wire communication in interstate commerce a funds transfer in the amount of $468,971.86 from Wachovia Bank in Philadelphia, Pennsylvania, to First American Trust Company in Santa Ana, California, in violation of 18 U.S.C. § 1343.

Leiskunas pled not guilty to the charge in the indictment. Later, he withdrew his plea of not guilty and entered a plea of guilty. Rather than enter into a plea agreement with the government, Leiskunas filed a written plea declaration in which he admitted that he agreed to act as a straw buyer of seven properties. He also stated that another individual in the scheme told him that he would receive some form of payment for his willingness to be a straw buyer when the properties were eventually resold. He admitted that he was present at mortgage transaction closings in his role as the straw buyer, and that he "understood that he did not have to live in any of the properties for which he was signing mortgage applications." During these closings, Leiskunas provided his identification, reviewed the

final loan paperwork, and approved documents that contained false financial and employment information. He also acted as though he was a legitimate buyer, when he knew he was not. Leiskunas never intended to assume any mortgage liability for the properties, even though the properties were being purchased based on mortgages acquired in his name.

A Pre-Sentence Report (PSR) was prepared in advance of Leiskunas's sentencing hearing. The PSR noted that a total of $4,473,161.55 was transferred from the mortgage loan companies to the banks due to Leiskunas's fraudulent purchase of seven properties. The PSR also explained that as a result of Leiskunas's participation in the scheme, a co-schemer deposited $90,000 into Leiskunas's bank account, $30,000 of which Leiskunas transferred to two other accounts. The PSR also concluded that his base offense level was seven, and contained a recommendation that he receive a 16-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(I), for causing a loss greater than $1,000,000 but less than $2,500,000, because of a reasonably foreseeable loss of at least $1,792,000. The loss amount was calculated by the probation officer based on the government's estimate of loss and the probation officer's interview of the case agent. The $1,792,000 figure was determined by calculating the difference between the $4,473,161.55 loan amount and the amount recouped when each property was eventually resold, after Leiskunas defaulted on the

loans.[1] Leiskunas was credited with a three-level adjustment under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility. With a Category II criminal history, and a total offense level of 20, Leiskunas's advisory guidelines range was 37-46 months' imprisonment.

During Leiskunas's sentencing hearing, the government's proposed loss calculation method mirrored that of the PSR. The government argued that the applicable loss amount for Leiskunas's crime "is not the full amount of the loans that Mr. Leiskunas got, but rather . . . the difference between the amount of the loan that he got and the eventual price for which the house was resold. . . . We're not holding him accountable for the full price of the fraud. It's just the loss."

Also, the government stated that a sentence adjustment for acceptance of responsibility was appropriate because "[w]hen Mr. Leiskunas was arrested, he was fully cooperative. He gave a full confession. . . . Subsequent to that, he's met with agents and the U.S. Attorney's office every time he's been asked to meet. He has agreed to testify when he's been asked to testify. And he has been willing to offer information." However, the government did not make a motion under U.S.S.G. § 5K1.1, which allows the court to depart from the guidelines based on the government's representation that the de-

---

[1] Using this method, and using the mortgage resale figures provided in the government's sentencing memorandum, the loss amount should have been calculated as $1,790,500, not $1,792,000.

fendant gave substantial assistance to governmental authorities.

Regarding Leiskunas's role in the scheme, the government argued that a minor role adjustment was not appropriate in Leiskunas's case because he "was central . . . [t]he deals would not have gone through without the straw buyer there. . . . And he took several steps as well for each of the seven properties. . . . This is someone who is at the heart of the fraud. . . . [H]e should be held accountable for his own conduct." In response, Leiskunas argued that he deserved a minor role adjustment as well as a further reduced sentence due to his substantial assistance to the government. As to the minor role adjustment, Leiskunas's attorney argued that he acted only at the direction of others, had no idea how large the scheme was or the number or identities of the co-schemers, exercised no power over the scheme, and that he was a replaceable cog within the scheme. With respect to the substantial assistance adjustment, his attorney noted that "he has done everything that was asked of him. He has gone in, he's identified individuals. He's pointed out pictures. He's explained his story. He's testified in the grand jury. . . . [H]e provided substantial assistance [to the government] that allowed them to continue in their investigation." Leiskunas also contended that the loss amount attributed to him by the government was wrong. His attorney argued that Leiskunas believed that the houses that he fraudulently purchased would be resold at a profit, and that "he had no reasonable foreseeability when it came to knowing that [foreclosure] was going to happen to the banks."

But the court declined to apply the minor role enhancement in sentencing Leiskunas and stated:

> I can't say that you had a minor role here, because you were in a sense necessary for this to happen. You need the straw buyer or [the scheme] isn't going to happen at all. If this were just one transaction or maybe two, I could say it's a much closer case. Seven, I can't say it's a closer case. . . . You were an integral part of this. What makes you a minor participant is if you just had a transitory brush with the activity, or it was an opportunistic moment that somebody took advantage of in just making one or two bad decisions. . . . I just cannot conclude in good faith that you are a minor participant.

The court also declined to apply the substantial assistance adjustment, stating:

> In a way, I can't get involved in [the cooperation issue], because my experience with the government is that if they had a . . . reason to ask for a departure, they would do that. . . . I'm not going to insinuate myself . . . into that. . . . I understand that that's a 3553 factor, I'm just not in a position to quantify that at this point from what I've heard. . . . I think the sentence is reasonable. . . . [Those are] prosecutorial decision[s] that I'm not going to make for them.

But the judge also acknowledged that he had the discretion to consider Leiskunas's cooperation in determining his sentence, and that, if he so chose, "I [could] give him

time served. . . . I'm just not exercising my discretion to give [Leiskunas] that break. . . . I just don't feel strongly enough about [the cooperation] argument to exercise my discretion in your favor on it. . . . It's not that I haven't considered it. I have considered it."

The court did not address the government's position that Leiskunas was responsible for a loss amount of $1,792,000, or Leiskunas's position that the loss amount was not reasonably foreseeable to him.[2]

Adopting the recommendation of the PSR, the court concluded that Leiskunas's applicable guidelines range was 37-46 months' imprisonment, and sentenced Leiskunas to 37 months' imprisonment, two years of supervised release, and $1,792,000 in restitution. Leiskunas timely appealed, asserting that the court erred by refusing to grant his substantial assistance request; in adopting his loss calculation amount; and in interpreting the minor role adjustment.

## II. ANALYSIS

### A. No Abuse of Discretion in Rejecting Substantial Assistance Argument

Leiskunas contends that the court imposed an unreasonable sentence when it refused to reduce his sentence

---

[2] The government also argued that a sophisticated means enhancement was necessary in calculating Leiskunas's sentence. Leiskunas argued that the enhancement was inappropriate and the court did not apply the enhancement.

based on his cooperation pursuant to 18 U.S.C. § 3553. We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010). This standard requires that we defer to the sentencing judge, who considers each defendant as an individual, and decides sentences on a case-by-case, rather than wholesale, basis. *Gall v. United States*, 552 U.S. 38, 51-52 (2007); *United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008). The district court has substantial discretion in choosing a reasonable sentence. *United States v. Arceo*, 535 F.3d 679, 688 (7th Cir. 2008). A within-guidelines sentence is presumed reasonable on appeal, *United States v. Doe*, 613 F.3d 681, 690 (7th Cir. 2010), and a lowest possible within-guidelines sentence will almost never be unreasonable. *United States v. Vallar*, 635 F.3d 271, 279 (7th Cir. 2011). We find that the court did not abuse its discretion in declining to lower Leiskunas's sentence below his guidelines range based on his assertion of cooperation.

During Leiskunas's sentencing, the court noted that the government could move for a reduced sentence under U.S.S.G § 5K1.1 or Federal Rule of Criminal Procedure 35. It stated that those were "prosecutorial decision[s] that I'm not going to make for them." Although the government requested a sentencing adjustment for acceptance of responsibility for Leiskunas, it did not say that he gave substantial assistance. And the court declined to sentence Leiskunas below his guidelines range and instead sentenced him to 37 months' imprisonment, which was at the lowest end of his advisory guidelines range. On appeal Leiskunas asserts that the

court gave too much weight to the government's decision not to move for substantial assistance, and that the court felt that it did not have the authority to independently lower his sentence.

A district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 or Rule 35 motion. *See United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009); *United States v. Richardson*, 558 F.3d 680, 681-82 (7th Cir. 2009). It would be reversible error if the court had said that it could not independently consider Leiskunas's cooperation in fashioning his sentence because the government did not make a § 5K1.1 motion. *See United States v. Schmitt*, 495 F.3d 860, 865 (7th Cir. 2007) (reversing where "the tenor of [the judge's] remarks indicated that he felt that there was an outside constraint on his discretion that he was not free to set aside."). Here, however, the court repeatedly said that it knew that it had the discretion under 18 U.S.C. § 3553 to lower Leiskunas's sentence because of his cooperation, but that "I'm just not exercising my discretion to give you that break. . . . I just don't feel strongly enough about [the cooperation] argument to exercise my discretion in your favor on it." Here, the court did not abuse its discretion in sentencing Leiskunas to the lowest end of his advisory guidelines range following its consideration, and rejection, of Leiskunas's cooperation argument.

**B. Explanation of Reasonably Foreseeable Loss Necessary**

Leiskunas argues that the court erred in attributing $1,792,000 to him in reasonably foreseeable loss without explaining its conclusion that he was actually responsible for $1,792,000. The definition of loss is a question of law that we review de novo, and the amount of loss calculated by the district court is a finding of fact that we review for clear error. *United States v. Vivit*, 214 F.3d 908, 914 (7th Cir. 2000).[3] We review de novo whether the court followed proper procedures at sentencing. *United States v. Abebe*, No. 10-3966, 2011 WL 2557631, at *1 (7th Cir. June 29, 2011). We find that the court should have explained its rationale in attributing the loss amount it did to Leiskunas.

---

[3] The government argues on appeal that Leiskunas waived or forfeited his argument that the district court erred in attributing $1,792,000 to him in reasonably foreseeable loss because he failed to raise that argument during sentencing. However, Leiskunas argued that the loss figure of $1,792,000 was not reasonably foreseeable to him in his Sentencing Memorandum and Objections to the PSR, and raised the argument again at his sentencing hearing when his attorney said, "[Leiskunas] had no reasonable foreseeability when it came to knowing that [foreclosure] was going to happen to the banks." Raising this issue again after the court adopted the presentence report was not necessary to preserve the argument for appeal. *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("[T]he rules do not require a litigant to complain about a judicial choice after it has been made.").

The court adopted the presentence report, but it did not address Leiskunas's position regarding the amount of loss that was reasonably foreseeable to him. Leiskunas argued in his sentencing memorandum and again at his sentencing hearing that $1,792,000 could not be attributed to him in reasonably foreseeable loss because he had no idea that the properties were going to go into foreclosure. "A sentencing court commits procedural error by not adequately explaining its choice of sentence." *United States v. Garcia-Oliveros*, 639 F.3d 380, 381 (7th Cir. 2011) (per curiam). And some "statement of the district court's reasoning is necessary for this court to be able to meaningfully review its decision." *United States v. Marion*, 590 F.3d 475, 477 (7th Cir. 2009) (remand of district court's denial of a sentence reduction under 18 U.S.C. § 3582(c)(2)). Here, the lack of explanation by the district court in attributing $1,792,000 to Leiskunas in reasonably foreseeable loss means we cannot meaningfully review the court's decision. And, because of the court's silence, we cannot be sure of the effect that Leiskunas's argument had, or could have had, on the court's sentencing decision. *United States v. Villegas-Miranda*, 579 F.3d 798, 802 (7th Cir. 2009) (citing *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). *See also United States v. Johnson*, 643 F.3d 545, 549 (7th Cir. 2011) ("A sentencing court need not respond expressly to every argument a defendant makes, but it must address all of a defendant's principal arguments that are not so weak as to not merit discussion.") (citations and internal quotations omitted). These procedural standards operate as safeguards against unintentional infringements on defendants' rights.

We remand to give the court an opportunity to explain its rationale in attributing a loss amount to Leiskunas. We express no opinion as to the propriety of arriving at the same figure of reasonably foreseeable loss on remand, but such a determination should be explained by the district court. On remand, the district court should also address Leiskunas's restitution order and the $1,500 arithmetical error that both parties concede is currently present.

### C. Minor Role Adjustment Misinterpreted

Leiskunas also disagrees with the district court's rejection of his request for a minor role adjustment pursuant to U.S.S.G. § 3B1.2. We find that the court erred in interpreting the adjustment, but will not decide whether Leiskunas was prejudiced by the misinterpretations since the lack of explanation of reasonably foreseeable loss already necessitates remand. However, on remand, the court should consider Leiskunas's minor role arguments, and the government's counter-arguments, without relying on its previous faulty interpretations.

We review the district court's interpretation and application of the federal sentencing guidelines de novo, *United States v. Abbas,* 560 F.3d 660, 662 (7th Cir. 2009), and review the decision to deny a defendant a minor role reduction for clear error. *United States v. Panaigua-Verdugo,* 537 F.3d 722, 724 (7th Cir. 2008). We will find clear error only when our review of the evidence leaves us "with a definite and firm conviction that a mistake has been committed," and we will rarely reverse, because the

sentencing court is in the best position to evaluate the defendant's role in the criminal activity. *United States v. Haynes*, 582 F.3d 686, 709 (7th Cir. 2009); *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004).

U.S.S.G. § 3B1.2 calls for a two-, three-, or four-level reduction in the offense level if a defendant played a minor or minimal role in a criminal activity. A minor role adjustment is appropriate if the defendant is "substantially less culpable" than the average participant, but whose role could not be described as minimal. *Haynes*, 582 F.3d at 709; *see also* U.S.S.G. § 3B1.2, cmt. n. 3(A) & n. 5. The fact that others were more involved in a crime does not necessarily entitle a defendant to a minor role reduction. *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007).

Leiskunas argues that the court erred in interpreting and applying U.S.S.G. § 3B1.2, which we review de novo. During sentencing, in its evaluation of whether a minor role adjustment was appropriate, the court said:

> I can't say that you had a minor role here, because you were in a sense necessary for this to happen. . . . If this were just one transaction or maybe two, I could say it's a much closer case. Seven, I can't say it's a closer case. . . . What makes you a minor participant is if you just had a transitory brush with the activity, or it was an opportunistic moment that somebody took advantage of in just making one or two bad decisions.

The court misinterpreted the minor role reduction application in two ways. First, playing a necessary role

does not definitively prevent that same role from being minor. This principle is readily seen in the wealth of cases where drug couriers receive the benefit of the adjustment, even though their role is necessary to the drug distribution. Second, a criminal participant that commits a minor act is not necessarily precluded from minor role consideration simply because the minor act is repeated. It is true that a court can consider whether a defendant has repeatedly committed an act in making its sentencing determination. *See United States v. Saenz*, 623 F.3d 461, 468 (7th Cir. 2010) (remanding for minor role sentence reconsideration where record indicated that drug courier committed offense on single occasion). But a defendant's repeated, negligible participation in a fraudulent scheme does not, by itself, doom qualification for a minor role adjustment. *Id.* (a "drug courier should neither automatically receive nor automatically be precluded from receiving a role reduction.").

Rather than relying on a determination of whether Leiskunas's act was necessary or repeated, the court should have evaluated Leiskunas's role in context of the other participants in the scheme, keeping in mind that a minor player is substantially less culpable than the average participant, not the leaders. *United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008). At this point, we would ordinarily decide whether the interpretation errors required resentencing, or if the doctrine of harmless error applies. *United States v. Olson*, 450 F.3d 655, 683 (7th Cir. 2006). We need not make such a determination here, though, because we are remanding based on the issue of reasonably foreseeable loss. On remand, the

court should consider Leiskunas's minor role arguments, and the government's counter-arguments, without relying on its past misinterpretations.

## III. CONCLUSION

The decisions of the district court are AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.