NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2012
Decided October 4, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3640

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 518-1 |
| PETRU VALCAN, *Defendant-Appellant.* | George W. Lindberg, *Judge.* |

**O R D E R**

Petru Valcan pled guilty to conspiring to produce false passports, 18 U.S.C. § 371. He was sentenced to 37 months' imprisonment, the bottom of his guidelines range. On appeal he argues that the district court erred in not applying an adjustment under U.S.S.G. § 3B1.2, which decreases the sentencing range of a defendant whose role in a conspiracy makes him substantially less culpable than the average participant. The district court did not clearly err; Valcan spent almost five months playing an essential role in laundering $1.4 million of stolen money, and he has not provided evidence that his role was minor compared to the other participants in the scheme—we know almost nothing about who the other participants were, let alone what they did. We thus affirm the judgment.

Over approximately five months in early 2010, Valcan, an Australian citizen, conspired with an entity in Romania to launder approximately $1.4 million the entity had stolen from over 400 victims in the United States. (We do not know how many people in Romania were involved—maybe only one, although the parties and the district court often assume more than one—so we call Valcan's coconspirator or coconspirators an entity.) Valcan became involved when the entity sent him an email with a get-rich-quick "employment opportunity." The entity told him to send passport photographs of himself to an unknown individual in Romania, travel to the United States, and contact the entity when he got here. Valcan complied, and the parties soon implemented a plan: The entity would mail Valcan fake passports bearing his photograph but not his name; the entity would send text messages to Valcan with fictitious names for him to stencil onto the passports; and Valcan would use the fake passports to receive wire transfers from inside the United States and then wire the funds to the entity. Valcan earned five percent commission—about $70,000 total—for his efforts.

Authorities caught wind of the scheme when they came across a package of counterfeit passports that the entity had sent to a hotel where Valcan was staying, and a resulting investigation shed some light on the parties' roles in the scheme. The entity in Romania had made its money selling non-existent cars to victims over the Internet and needed someone in the United States (Valcan) to retrieve the funds. Valcan did not know who comprised the entity, how many people were involved, where the funds originated, or where the funds ended up. But he did know the money had been stolen, and he had received several text messages with descriptions of vehicles. Part of the reason he did not know more, he admitted, was that he "shut his eyes for fear of what he might know if he inquired further." Valcan was indicted for conspiring to produce false identification documents, *see* 18 U.S.C. § 371, and producing a false identification document, *see* 18 U.S.C. § 1028(a)(1). He eventually pled guilty to the conspiracy charge with a plea agreement.

In calculating Valcan's guidelines imprisonment range, a probation officer considered, but ultimately decided against, applying an adjustment under U.S.S.G. § 3B1.2. That adjustment provides a 4-level decrease in offense level for a defendant who was a "minimal" participant (plainly among the least culpable of those involved in an offense), a 2-level decrease for a defendant who was a "minor" participant (less culpable than most other participants but whose role cannot be described as minimal), and a 3-level decrease for a defendant who played a role somewhere in between. See § 3B1.2 cmt. nn.4–5. Valcan, according to the probation officer, did not meet the requirements of § 3B1.2, which applies when a defendant proves by the preponderance of the evidence that he is "substantially less culpable than the average participant" in the offense.  § 3B1.2 cmt. n.3(A); *see United States v. Lopez*, 545 F.3d 515, 516 (7th Cir. 2008). Valcan knew the passports were fake, used them to transfer the proceeds of fraudulent activity anyway, received a five percent commission for

doing so, and but for his role the entity in Romania would not have received the money. The officer calculated Valcan's total offense level at 21, which, combined with a criminal history category of I, yielded an imprisonment range of 37 to 46 months' imprisonment.

Valcan objected to the probation officer's conclusion that § 3B1.2 is inapplicable, but the district court disagreed. Focusing on the underlying online sales scheme, Valcan argued that he was only a low-level participant compared to the unknown leader or leaders who conceived the scheme, set up the fraudulent vehicle sales, recruited Valcan to receive payments, and created and disbursed the false passports. In overruling the objection, the court reasoned:

> You have argued that you are entitled to a reduction of your offense level under Section 3B1.2 of the Sentencing Guidelines because you claim to have played a minimal or minor role in the criminal activity. Such an adjustment is only available to a defendant who establishes that his part in the offense made him substantially less culpable than the average participant. The Court is not persuaded that your role made you substantially less culpable than the average participant in this crime—this criminal scheme.

> Over the course of nearly five months, you repeatedly used false identification documents to collect and transfer a large amount of money, approximately $1.4 million, from various locations in the United States to your coconspirators in Romania.

> In addition, although you argue that you initially lacked the knowledge that the scheme involved fraudulent vehicle sales on the Internet, some of the communications you received from your coconspirators referenced the vehicles.

> You have admitted that you knew the money you were collecting and transferring was proceeds of your coconspirators' unlawful transactions.

> While you did not have a leadership role, the Court finds that you played a significant role that was critical to the success of the criminal scheme, whether the scheme was limited to producing false identification documents or is the broader underlying fraudulent scheme.

> Accordingly, the Court finds that you have not met your burden of establishing that you are entitled to an adjustment for minimal or minor role.

The judge then adopted the probation officer's calculations of the guidelines, applied the sentencing factors under 18 U.S.C. § 3553(a), and imposed a low-end sentence of 37 months.

On appeal Valcan acknowledges that the money-laundering scheme (and not the underlying fraud scheme) is the proper baseline for evaluating his role for purposes of § 3B1.2, but he insists that the district court erred in not applying the adjustment.

Valcan first makes what appears to be an argument that the district court misinterpreted the guideline; Valcan suggests that the court treated two factors—that Valcan's criminal act was repeated and that the act was necessary to the scheme's success—as precluding minor- or minimal-role consideration. It is true that a court may not refuse to consider a defendant's § 3B1.2 argument on the basis that the defendant's role was repeated or necessary to the scheme's success. *See United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011). But here the judge's comments show that he considered those factors ("you repeatedly used false identification documents" and "you played a significant role that was critical to the success of the criminal scheme"), along with duration ("over the course of nearly five months"), scope ("a large amount of money, approximately $1.4 million" and "various locations in the United States"), and knowledge ("you knew the money you were collecting and transferring was proceeds of your coconspirators' unlawful transactions"), leading him to tell Valcan that "you have not met your burden of establishing that you are entitled to an adjustment for minimal or minor role." The argument was considered.

Next, acknowledging that the determination is one that "is heavily dependent on the facts of the particular case," U.S.S.G. § 3B1.2 cmt. n.3(C), Valcan contends that the district court clearly erred in declining to apply the adjustment. He argues, for example, that he had limited knowledge of the scheme because he did not know who his coconspirators were, where they were, or how many existed. And, as another example, although he earned approximately $70,000 for his role in the scheme, as Valcan points out, that amount represents only five percent of the total loss amount.

We disagree. Valcan needed to prove by a preponderance of the evidence that he is "substantially less culpable than the average participant" in the offense. U.S.S.G. § 3B1.2 cmt. n.3(A); *see United States v. Saenz*, 623 F.3d 461, 466–67 (7th Cir. 2010); *United States v. Haynes*, 582 F.3d 686, 709 (7th Cir. 2009). Valcan left his home in Australia to come to the United States, where he spent almost five months playing an essential role in laundering $1.4 million of stolen money—the entire money-laundering conspiracy, as far as he can tell us. *See Lopez*, 545 F.3d at 516–17 (upholding district court's denial of adjustment, even

though only other participant in drug conspiracy was mastermind behind the sales, because defendant "engaged in several deliveries of large quantities of cocaine—key activities to the success of the enterprise given its scope"); *United States v. Panaiguia-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008) (upholding district court's denial of adjustment because defendant "delivered the vast majority of drugs charged" in drug conspiracy and "played an integral role" in conspiracy). The district court's rejection of Valcan's assertion that he had a minor role in the scheme was not clearly erroneous, even though Valcan had limited knowledge of the scheme and took home only a percentage of the proceeds; after all, he provided no evidence to show that the average participant took home more of the proceeds or had more knowledge. *See Leiskunas*, 656 F.3d at 739 (noting that focus is on average participant, not leaders). He has not even explained why knowledge is relevant to what he *did*.

AFFIRMED.