In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-1960

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO GUZMAN-RAMIREZ,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-CR-0094(1) — **Edmond E. Chang**, *Judge.*

———————————

ARGUED JANUARY 30, 2020 — DECIDED FEBRUARY 10, 2020

———————————

Before MANION, KANNE, and SYKES, *Circuit Judges.*

PER CURIAM. After Roberto Guzman-Ramirez pled guilty to conspiracy to distribute cocaine, he was sentenced to 72 months' imprisonment. On appeal, he contends that the district court should have applied a minor-role adjustment under the Sentencing Guidelines. He also argues that—compared to his coconspirator's sentence—his sentence is unreasonable.

But the district court did not clearly err in its findings on Guzman-Ramirez's role in the offense. And because the court was not required to consider a coconspirator's sentence that had not yet been imposed, it did not abuse its discretion by imposing a sentence longer than the coconspirator's. Accordingly, we affirm.

## I. BACKGROUND

In 2016, a supplier in Mexico hired Guzman-Ramirez and his coconspirator, Jorge Gonzalez, to import 50 kilograms of cocaine into Wisconsin for sale. Gonzalez was to haul the cocaine in a semi-trailer from Texas to Chicago. Guzman-Ramirez would then meet Gonzalez in Chicago and help remove the cocaine from a hidden compartment in the trailer. Guzman-Ramirez and another accomplice agreed to bring half of the cocaine to Milwaukee and store it at Guzman-Ramirez's house or business (Guzman-Ramirez owned an auto-body shop) until it could be picked up by an associate of the Mexican supplier. The supplier then asked another associate—who was an informant for the Drug Enforcement Administration—to go to Chicago and assist in the transaction. The supplier told the informant that Guzman-Ramirez would be his point of contact and gave the informant Guzman-Ramirez's contact information.

Guzman-Ramirez and his accomplice arrived in Chicago as planned. They then met the informant and another accomplice at a rest stop near O'Hare airport to await Gonzalez. The conspirators planned to move Gonzalez's truck to an auto shop in the city so that they could remove the cocaine in secrecy. But when Gonzalez arrived, they discovered that the truck would not fit below an overpass on the route to the shop, and so they were unable to bring it there.

Guzman-Ramirez and the informant contemplated other secluded locations where they could unload the truck; they were unable to come up with one. During the conversation, Guzman-Ramirez expressed familiarity with the total amount of cocaine in the semi-trailer, how the secret compartment worked, and how long it would take to remove the cocaine. Ultimately, the group decided to postpone the transaction, and Guzman-Ramirez returned to Milwaukee without the drugs.

The next day, law enforcement agents searched the semi-trailer and removed 50.12 kilograms of cocaine. Guzman-Ramirez was charged with, and pled guilty to, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. The government separately indicted Gonzalez on the same charge. Gonzalez's case was assigned to a different district judge, and Gonzalez—like Guzman-Ramirez—pled guilty.

A probation officer prepared a presentence investigation report and calculated Guzman-Ramirez's total offense level to be 31 with a criminal history category of I. The officer considered, but declined to recommend, an enhancement or reduction to the offense level, under U.S.S.G. §§ 3B1.1 or 3B1.2, for Guzman-Ramirez's role in the conspiracy. Although the officer concluded that Guzman-Ramirez did not have an aggravating role in the conspiracy, the officer nonetheless determined that his role was significant, citing: Guzman-Ramirez's position as the contact person for the informant; his participation in discussions about where to drive the truck after learning that the truck could not make it to the auto shop; and his agreement to store half of the cocaine. Guzman-Ramirez objected to the probation officer's guidelines calculation,

contending that he was entitled to a two-level reduction under U.S.S.G. § 3B1.2(b), because he agreed only to transport and store the drugs, and because he had no decision-making authority. The government opposed the reduction.

At the sentencing hearing, the district court declined to apply the reduction under § 3B1.2. In addressing whether Guzman-Ramirez was "substantially less culpable than the average participant," the court identified as average participants Gonzalez and the accomplice who planned to help move half of the cocaine from Chicago to Milwaukee. The court reasoned that Guzman-Ramirez was not substantially less culpable than these coconspirators, even if other members of the conspiracy, like the supplier, were clearly more culpable. And although Gonzalez had a history of smuggling drugs for the Sinaloa drug cartel—a history that Guzman-Ramirez lacked—the court reasoned that Gonzalez's prior smuggling was separate criminal activity for which Gonzalez had already been convicted. For this particular shipment, the court found that Gonzalez was just a driver and "not much more culpable, if at all, than Mr. Guzman-Ramirez as the person who is going to receive the load." The court also noted that the conspiracy's leaders placed a substantial amount of trust in Guzman-Ramirez, as shown by his role as a point of contact between other members, his agreement to store half of the cocaine, and his knowledge of the amount of cocaine being sent to others.

The parties agreed, however, that Guzman-Ramirez qualified for the safety-valve provisions of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). The safety valve decreased Guzman-Ramirez's total offense level to 29, which gave him a guidelines range of 87 to 108 months' imprisonment. The

court imposed a sentence of 72 months' imprisonment, 15 months below the bottom of the range.

Six weeks later, a different judge sentenced Gonzalez. Unlike in Guzman-Ramirez's case, the presentence investigation report for Gonzalez recommended a minor-role adjustment under § 3B1.2. Gonzalez's sentencing judge granted the adjustment—over the government's objection—and calculated Gonzalez's total offense level to be 24 with a criminal history category of III. Gonzalez's guidelines range was 63 to 78 months' imprisonment, and the judge imposed a sentence of 48 months.

## II. ANALYSIS

On appeal, Guzman-Ramirez first contends that he is entitled to a minor-role adjustment because he only transported and stored the cocaine. The minor-role adjustment applies when a defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant." *United States v. Orlando*, 819 F.3d 1016, 1025 (7th Cir. 2016) (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)). When determining whether this adjustment applies, courts compare the defendant's role to that of an average member of the conspiracy, not to that of the leaders. *Id.* at 1025. District courts are instructed to consider several factors when assessing the defendant's role in the conspiracy; these include his knowledge of the conspiracy, participation in planning and decision-making, and potential financial gain. *United States v. Campuzano-Benitez*, 910 F.3d 982, 989 (7th Cir. 2018) (citing U.S.S.G. § 3B1.2 cmt. n.3(C)). A district court must make factual findings to determine whether a defendant should receive a minor-role reduction, and, therefore, we review the decision for

clear error. *United States v. Tartareanu*, 884 F.3d 741, 745 (7th Cir. 2018).

We are not convinced by Guzman-Ramirez's arguments in favor of applying the reduction. First, Guzman-Ramirez appears to argue in his opening brief that drug couriers like him should categorically receive a minor-role adjustment. He emphasizes the Sentencing Commission's comment that a defendant whose role "was limited to transporting or storing drugs" may be eligible for a reduction. U.S.S.G. § 3B1.2, cmt. n.3(A). And he seizes upon our language in *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011), that a drug courier may receive a minor-role adjustment because "playing a necessary role does not definitively prevent that same role from being minor." But—even accepting Guzman-Ramirez's self-characterization as a mere courier—the adjustment's application is fact specific, based on the district court's evaluation of "[the defendant's] role in context of the other participants in the scheme." *Id.*

For the same reason, Guzman-Ramirez's attempt to establish his entitlement to the reduction by comparing himself to defendants in other cases who, he says, engaged in similar conduct, is futile. The district court correctly compared Guzman-Ramirez's conduct to that of other members in the *same* conspiracy. *See United States v. Sandoval-Velazco*, 736 F.3d 1104, 1108 (7th Cir. 2013). Further, we concluded that the district court erred by denying the reduction in only one of the cases Guzman-Ramirez cites.[1] *See United States v. Hunte*, 196 F.3d

---

[1] In the other three cases Guzman-Ramirez cites, we affirmed the district court's determination regarding the defendant's role in the conspiracy. *See United States v. Mendoza*, 457 F.3d 726, 730 (7th Cir. 2006); *United*

687, 695 (7th Cir. 1999). And in that case, the defendant only helped to cover up the drug trafficking of others; the defendant "provided nothing 'necessary' or 'essential' to the operation." *Id*. at 694. By contrast, Guzman-Ramirez agreed to unload, transfer, and store a large quantity of cocaine.

Guzman-Ramirez also argues that, within his conspiracy, he was less culpable than Gonzalez for three reasons: Guzman-Ramirez "abandoned" the conspiracy before he completed his role; Gonzalez had a history of drug smuggling; and Gonzalez was paid more. But these reasons do not hold up.

First, rather than demonstrating abandonment of the conspiracy, the record shows only that the conspirators had to postpone the transaction because they had nowhere to unload the drugs. Indeed, before returning to Milwaukee, Guzman-Ramirez tried to come up with somewhere else to bring the truck. And law enforcement seized it the very next day.[2]

Second, the district court acknowledged Gonzalez's history with the cartel and explained why it was irrelevant to the minor-role inquiry. For this shipment, both defendants served as middlemen, and both were to receive a flat fee.

Third, although the court did not mention that Gonzalez was to be paid more than Guzman-Ramirez, he was not required to mechanically address every factor listed in the

---

*States v. Johnson*, 997 F.2d 248, 258 (7th Cir. 1993); *United States v. Hagan*, 913 F.2d 1278, 1283 (7th Cir. 1990).

[2] To the extent that Guzman-Ramirez means to imply that he withdrew from the conspiracy, he points to no evidence that he took affirmative action to disavow or defeat the purpose of the conspiracy. *See Smith v. United States*, 568 U.S. 106, 113 (2013).

guideline comments. *See Campuzano-Benitez*, 910 F.3d at 989. Further, the court pointed to several details establishing that Guzman-Ramirez was at least as important to the conspiracy as Gonzalez: In addition to transporting drugs, Guzman-Ramirez served as the point of contact between the supplier and dealer; he was entrusted with storing half of the cocaine; and he demonstrated familiarity with the full scope of the truck's contents—including drugs that were intended for other recipients. Given these findings, Guzman-Ramirez has not shown that the district court's conclusion about his role in the conspiracy was clearly erroneous.

Next, Guzman-Ramirez contends that his sentence was unreasonable because the district court's findings were erroneously inconsistent with those of the judge who sentenced Gonzalez. This inconsistency, Guzman-Ramirez reasons, created an unwarranted sentencing disparity when Gonzalez received a minor-role reduction and a lighter sentence than Guzman-Ramirez received.

We review the substantive reasonableness of a sentence for abuse of discretion. *Orlando*, 819 F.3d at 1025. A below-guidelines sentence, like Guzman-Ramirez's, is presumptively reasonable. *Id.*

Guzman-Ramirez cannot rely on Gonzalez's shorter sentence to establish that his own sentence was unreasonable. Gonzalez was sentenced after Guzman-Ramirez, and by a different judge. We have consistently rejected arguments that compare an appellant's sentence to those of a later-sentenced coconspirators. *See United States v. Cardena*, 842 F.3d 959, 999 (7th Cir. 2016) (explaining that the judge could not have erred by failing to consider a not-yet-imposed sentence of a coconspirator). Even if Guzman-Ramirez and Gonzalez had been

sentenced by the same judge, it is well established that, when sentencing a defendant before coconspirators have been sentenced, "the district court could not have erred by failing to consider [coconspirators'] sentences, which had not yet been imposed." *Id.* at 999; *see also United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019).

Guzman-Ramirez asks us to instead follow the Eighth Circuit's decision in *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006), another case that involved two defendants who had comparable roles in the same conspiracy but were sentenced by different judges and received disparate sentences. But unlike this case, *Lazenby* was a consolidated appeal of both defendants' sentences (one by a defendant and one by the government); the court found one sentence too high, and the other too low, and vacated them both. *Id.* at 929. The unfair discrepancy (one of multiple errors the appellate court identified) could be addressed by decreasing one defendant's sentence, increasing the other's, or both. Here, neither the government nor Gonzalez has appealed Gonzalez's sentence, so the *Lazenby* remedy is not available. *See United States v. Hemsher*, 893 F.3d 525, 535 (8th Cir. 2018) (explaining that *Lazenby* applies only to consolidated appeals). The only potential resolution is to vacate Guzman-Ramirez's sentence, but there is no procedural or substantive error that warrants doing so.

### III. CONCLUSION

The district court did not clearly err when declining to give Guzman-Ramirez a minor-role enhancement, nor did it abuse its discretion when imposing a sentence that was longer than the one Gonzalez later received. We therefore AFFIRM the judgment of the district court.