KANNE, Circuit Judge.
John Bums made fraudulent misrepresentations when soliciting investments for his employer, USA Retirement Services (“USARMS”). Burns told investors that he had experience managing investments and that he had personally invested in *683 USARMS’s promissory notes. His statements were false. Moreover, without Burns’s knowledge, the investment opportunity was fraudulent. USARMS’s owners were operating a Ponzi scheme.
With USARMS’s owners out of the picture for various reasons, the government filed a superseding indictment against Burns. The government alleged that Burns committed fraud by making material misrepresentations to investors. A jury convicted Burns on two counts of wire fraud and three counts of mail fraud. Despite not alleging that Burns knew of or participated in the Ponzi scheme, the government sought to hold Burns accountable for the entire $3.3 million the investors that he solicited lost as a result of the Ponzi scheme. The district court enhanced Burns’s sentence, ordered restitution, and ordered forfeiture based on the victims’ $3.3 million total loss.
On appeal, Burns argues that there was insufficient evidence to convict him of making material misrepresentations. Burns also challenges the sentencing enhancement and the restitution order on grounds that the district court did not determine that he proximately caused the victims’ loss. Finally, Burns argues that the forfeiture order was improper because it was based on the victims’ loss and not on his gain. Because there was sufficient evidence to convict, we affirm Burns’s conviction. But because' the district court erred in calculating the sentence, restitution order, and forfeiture order, we remand for resen-tencing.
I. Background
At USARMS; Burns’s primary job was to provide estate-planning services to clients. In addition to those services, Burns would offer clients an opportunity to invest in promissory notes that USARMS sold. The notes were allegedly backed by Turkish bonds. USARMS’s owners, Francois Durmaz and Robert Pribilski, claimed to have a connection in the Turkish government that allowed them to purchase the bonds at a below-market rate. USARMS guaranteed an 8.5 percent rate of return and told investors that returns could be as high as 14 percent.
As the high guaranteed rate of réturn might have hinted, the investment opportunity was too good to be true. USARMS never purchased Turkish bonds. Instead, Durmaz and Pribilski used the investments for their personal use and to pay earlier investors “returns” on their investment-indicia of a classic Ponzi scheme.
The government’s original criminal complaint charged only Durmaz with wire fraud in connection with the Ponzi scheme. Perhaps aware that the scam had run its course and was about to collapse, Durmaz fled the country before the original complaint was filed. Roughly two years later, the government filed an indictment against Durmaz, Pribilski, and Burns, charging them with various counts of wire and mail fraud. Pribilski pled guilty to the charges. But before he could be sentenced, he died.
With only Burns left alive and -in the United States, the government filed a superseding indictment. The government alleged that Burns had induced certain victims to invest in USARMS by falsely telling them that he had experience managing investments and that he and his family had invested in the Turkish bonds. The superseding indictment made no reference to the Ponzi scheme. In its response to Burns’s motion in limine, the government stated that the “Defendant is not alleged to have knowingly participated in the Ponzi scheme” and that the lies about his credentials and his personal investment are “the only crimes that defendant is alleged to have committed.” (R. 104 at 4.)
*684 At trial, the government called six of the victims Burns had solicited investments from. Five victims testified that they had relied on Burns’s statements that he and his family had invested in the Turkish bonds. A sixth victim testified that Burns said that he had experience handling investments and that he personally allocated Turkish bonds to investor, accounts.
At the close of evidence, the jury convicted Burns on two counts of wire fraud and three counts of mail fraud. The district court sentenced Burns to eighty-four months in prison and three years’ supervised release. When calculating the sentence, the district court applied an 18-level enhancement to account for the roughly $8.3 million Burns’s victims lost in their investment with USARMS. The district court also entered a restitution order and forfeiture order, both for $3.3 million. Burns filed a motion for judgment of acquittal and a motion for a new trial. The district court denied the motions, and this appeal followed,
II. ANALYSIS
On appeal, Burns challenges his conviction, his sentence, the restitution order, and the forfeiture order. Burns argues that his statements about his financial background and his personal investment in USARMS were puffery and thus could not have been material misrepresentations. Regarding the length of his sentence and the restitution order, Burns contends that the district court did not establish that he proximately caused the victims’ loss. Accordingly, Burns claims that the court improperly enhanced his sentence and ordered him to pay more in restitution than the loss that he caused. Finally, Burns challenges the forfeiture order because the court ordered forfeiture based on the victims’ $3.3 million loss instead of the amount that he gained from his unlawful conduct.

A, Sufficiency of the Evidence

We review de novo the denial of a motion for the judgment of acquittal. United States v. Peterson, 823 F.3d 1113, 1120 (7th Cir. 2016). In reality, however, we apply the same analysis that we use when reviewing for the sufficiency of the evidence. Id. The burden for proving insufficiency of the evidence is “heavy” and “neaiiy insurmountable.” United States v. Dessart, 823 F.3d 395, 403 (7th Cir. 2016). Burns must prove “that even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt.” Id. (internal quotation marks omitted); see also United States v. Clarke, 801 F.3d 824, 827 (7th Cir. 2015).
A statement is material if it has the ability to influence a person’s decision. United States v. Seidling, 737 F.3d 1155, 1160 (7th Cir. 2013) (citing Neder v. United States, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Burns’s argument that his statements were puffery, akin to a used-car salesman’s sales pitch, is unavail ing. “Puffing” is “[t]he expression of an exaggerated opinion — as opposed to a factual misrepresentation — with the intent to sell a good or service.” Black’s Law Dictionary 1269 (8th ed. 2004). We have said that puffery is nonactionable because no reasonable person would rely on such “empty superlatives.” F.T.C. v. Trudeau, 579 F.3d 754, 765 (7th Cir. 2009).
Whereas puffery involves ambiguous and vague promises, Burns’s comments were factual and specific. He told investors that he and his family had invested in the bonds and were reaping the rewards of having done so. He told investors that he had a history of managing investments. He told investors that he had *685 quit a reputable bank job to work at USARMS. All of these were factual misrepresentations, not exaggerated opinions. All of these were a far cry from promises of a “good” investment, “can’t miss” opportunity, or other equivocal sales pitches buyers hear every day and are expected to discern and discount. United States v. Coffman, 94 F.3d 330, 334 (7th Cir. 1996). Accordingly, the jury’s verdict will be'affirmed.

B. Sentencing, Restitution, and Forfeiture

The government argues that Burns waived or at least forfeited his arguments about his sentence, the restitution order, and the forfeiture order. Consequently, we must first determine whether he preserved, forfeited, or waived his objection to the calculations.
1. Waiver
To preserve an issue for appeal, an appellant must make a “timely and specific objection” at trial in order to notify the court and the opposing party of the potential error and the ground for objection. United States v. Ousley, 698 F.3d 972, 975 (7th Cir. 2012).
Burns failed to preserve his objections in this case. When discussing the restitution and forfeiture orders at sentencing, Burns asked only if he alone would be responsible for the $3.3 million or if the awards would be apportioned (presumably among USARMS’s owners and himself). The apportionment argument does not articulate a specific objection to how restitution and forfeiture were calculated.
Nor did Burns specifically object to the loss calculation used to enhance his sentence. At sentencing, Burns argued that he should be responsible for 10 percent of the victims’ $3.3 million loss. But that argument was based on the fact that $3.3 million was only 10 percent of the entire loss that the Ponzi scheme caused. Although Burns intimated that he was not responsible alone for the loss, he never articulated the ■ proximate-cause objection that he makes here.
Because Burns did not properly preserve his objection during sentencing, we must determine whether Burns waived or merely forfeited his objection. “Waiver is the intentional relinquishment of a known right” and precludes judicial review by extinguishing the error. United States v. Butler, 777 F.3d 382, 387 (7th Cir. 2015) (citing United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Forfeiture, however, “is the failure to make the timely assertion of a right ... by accident or neglect.” Id. (citation and internal quotation marks omitted). Courts have only a limited power to correct forfeited errors. Id. at 386 (citing Olano, 507 U.S. at 731, 113 S.Ct. 1770).
The difference between forfeiture and waiver is hard to delineate. United States v. Garcia, 580 F.3d 528, 541 (7th Cir. 2009). At one point, the case law in this circuit suggested that a defendant’s failure to specifically object at sentencing established waiver in the strict sense of the term. See United States v. Martinez-Jimenez, 294 F.3d 921, 923 (7th Cir. 2002); United States v. Richardson, 238 F.3d 837, 841 (7th Cir. 2001). We have since declined to read those eaiiy cases as creating a bright-line rule that every objection not raised at sentencing is waived. Instead, we have held that “the important concern is whether a defendant chose, as a matter of strategy, not to present an argument.” Garcia, 580 F.3d at 541; see also United States v. Brodie, 507 F.3d 527, 531 (7th Cir. 2007); United States v. Jaimes-Jaimes, 406 F.3d 845, 848 (7th Cir. 2005). *686 A strategic decision demonstrates that the defendant made a knowing and intelligent waiver and did not negligently fail to raise the argument. The analysis -requires some conjecture on our part in light of the record viewed as a whole. Garcia, 580 F.3d at 542.
Conscious of the rule that waiver is to be “construed liberally in favor of the defendant,” Butler, 777 F.3d at 387, we cannot find that Burns waived his objections at sentencing.
The government offers three strategic reasons why Burns waived the objections that he makes here: (1) he accepted responsibility for the total loss so that he could argue for a lesser prison sentence, which would allow him to work and repay the debt quicker; (2) he agreed that $3.3 million was the appropriate number; and (3) he accepted $3.3 million because it was less than the total loss that the Ponzi scheme caused. All three arguments hinge on the idea that Burns accepted that he was responsible for the victims’ $3.3 million loss. All three arguments fail because the sentencing transcript belies Burns’s acceptance.
We consider restitution and forfeiture first. At sentencing, Burns questioned whether he would be responsible for the entirety of the orders. By asking whether the restitution and forfeiture orders would be apportioned, Burns necessarily implied that he should have to pay less than $3.3 million. The record does not reflect a strategic decision to accept the $3.3 million figure because Burns actually argued (although in a legally deficient manner) that the orders should be reduced. The omission was not “the result of a deliberate and strategic choice to pursue one sentencing argument” over another, and therefore, the argument is not waived. Butler, 777 F.3d at 387.
The same holds true for Burns’s objection to the loss amount used to enhance his sentence. Again using the $3.3 million figure, the district court increased Burns’s offense level by 18. U.S.S.G. § 2Bl.1(b)(1)(I) (2014). Although failing to properly preserve the objection, Burns argued at sentencing that using $3.3 million to enhance his sentence was excessive because of how small a portion his investors’ losses were out of the entire loss caused by the Ponzi scheme. That the argument was based on questionable legal reasoning is irrelevant. However weak the argument presented at sentencing may have been, it shows that he did not intentionally waive his objection to the loss amount used to enhance his sentence. A defendant does not strategically waive an argument that was inartfully articulated; instead, counsel was deficient for failing to properly raise the objection. Brodie, 507 F.3d at 532.
Despite our discussion above, the dissent makes much of the fact that Burns “agreed” with the $3.3 million number. The full dialogue at the sentencing hearing contradicts the dissent’s argument that Burns agreed that he proximately caused the full loss. The judge told Burns that he thought Burns agreed with the government’s loss number. Burns’s counsel responded that, “Well, we agree with the number. The only question is whether or not he is going to be responsible for the entire amount, which, I guess, is a restitution issue, or if it will be apportioned.” (R. 174 at 2.) The second part of Burns’s response discredits any claim that he agreed that he caused the victims’ full loss. That interpretation is buttressed by additional dialogue at sentencing. Moments later, Burns’s counsel again said, “We agree that that is the correct number, Judge.” (R. 174 at 3.) But that statement came only after counsel stated that $3.3 million “is the total amount of the loss.” (R. 174 at 3.) In context, we read Burns’s comments at sen- *687 fencing as agreeing only that his victims lost $3.3 million, not that he proximately caused the full loss. Burns did not make a strategic decision to forgo the arguments he raises here when he actually argued that he shouldn’t be responsible for the entirety of the victims’ loss. At most, Burns’s attorney negligently failed to raise the proximate-cause and forfeiture arguments. United States v. Jenkins, 772 F.3d 1092, 1096 (7th Cir. 2014).
We also remain unconvinced that Burns strategically decided to accept the $3.3 million figure so that he could plead for leniency in his sentence. Burns asked the judge for a lesser sentence so that he could work to pay off the restitution and forfeiture orders. Again, however, that argument did not depend on accepting responsibility for the full $3.3 million that his victims lost. He argued for leniency after he argued that he should be responsible for only 10 percent of the victims’ loss for sentencing purposes and that the restitution and forfeiture awards should be apportioned.
“Our duty when considering waiver is to divine from the record an intent to forego an argument....” Garcia, 580 F.3d at 542. We cannot divine a strategic decision to forgo an argument when a defendant makes both arguments. See Butler, 777 F.3d at 387 (finding forfeiture because the “omission was due to defense counsel’s oversight, rather than the result of a deliberate and strategic choice to pursue one sentencing argument while forgoing another”). The substance of-what Burns argued at sentencing would have had the same effect as the arguments he makes on appeal — namely a shorter sentence and reduced restitution and forfeiture orders. Agreeing with the victims’ loss total or indicating that a punishment is just no more signifies a knowing and intelligent waiver than explicitly telling the district court there are no further objections to a sentence. “We must consider the lawyer’s statement in light of the surrounding circumstances .and determine whether counsel made a knowing and intentional decision.” Garcia, 580 F.3d at 542. Without a convincing , strategic explanation that would demonstrate a knowing and intelligent waiver, we conclude that Burns forfeited — but did not waive — his objections. Jaimes-Jaimes, 406 F.3d at 848.

2. Plainr-Error Review

 Because Burns forfeited his arguments, we review the district court’s decision for plain error. Under plain-error review, we reverse the district court “only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant’s substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings.” United States v. Anderson, 604 F.3d 997, 1002 (7th Cir. 2010).
We pause here to address the dissent’s concern about our application of plain-error review. Our opinion should not be read as chastising Judge Kocoras for failing to address the arguments Burns presents here: indeed, we review for plain error because we explicitly hold that Burns did not preserve the arguments he now makes. Judge Kocoras, a learned and experienced jurist, did not intentionally or knowingly fail to address the arguments Burns raises here. The second element in plain-error review, that the error was “plain,” means that the error was “clear” or “obvious.” Olano, 507 U.S. at 734, 113 S.Ct. 1770. We have never required, however, that the error be obvious to the district court, only that the error was obvious under the law. See Jenkins, 772 F.3d at 1098 (holding that the district court plainly erred when it adopted “erroneous information in a PSR” no matter how “correct such information *688 appears”); see also Henderson v. United States, — U.S. -, 133 S.Ct. 1121, 1130, 185 L.Ed.2d 85 (2013) (“The Rule’s requirement that an error be ‘plain’ means that lower court decisions that are questionable but not plainly wrong (at time of trial or at time of appeal) fall outside the Rule’s scope.”). That Judge Kocoras understandably did not recognize the errors we address here does not factor into our analysis of whether the errors were plain.
If a plain error has occurred, the next step is to determine whether the defendant’s substantial rights are affected. Substantial rights are affected when the defendant can show “a reasonable probability that, but for the error, the outcome of the proceeding would have been different.” United States v. Hurlburt, 835 F.3d 715, 725 (7th Cir. 2016) (quoting Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1343, 194 L.Ed.2d 444 (2016)). The defendant need not show that the outcome certainly would have been different. Id.; see also United States v. Feinberg, 89 F.3d 333, 336 (7th Cir. 1996) (holding that to show prejudice, a defendant “must show that but for the [error], the outcome of the trial probably would have been different”). We agree with the dissent that plain-error review is to be applied rigorously. United States v. Hallaban, 756 F.3d 962, 979 (7th Cir. 2014). We disagree, however, about whether the facts show a reasonable probability that,, but for the error, the outcome of the proceeding would have been different. For the reasons discussed below, we hold that there is a reasonable probability that the outcome at sentencing would have been different absent the error.

a. Sentencing Enhancement

Under the Sentencing Guidelines, a defendant’s base level is increased according to the loss associated with the crime. U.S.S.G. § 2Bl.l(b)(l). “Loss” in § 2Bl.l(b)(l) is defined as “the greater of actual loss or intended loss.”[1] U.S.S.G. § 2B1.1 cmt. n.3(A). “ ‘Actual loss’ means the reasonably foreseeable pecuniary harm that resulted from the offense.” U.S.S.G. § 2B1.1 cmt. n.3(A)(i). “Reasonably foreseeable pecuniary harm” means loss that the defendant knew or reasonably should have known “was a potential result of the offense.” U.S.S.G. § 2B1.1 cmt. n.3(A)(iv). We have held that determining whether loss was reasonably foreseeable requires causation analysis. United States v. Domnenko, 763 F.3d 768, 777 (7th Cir. 2014); United States v. Whiting, 471 F.3d 792, 802 (7th Cir. 2006). Causation includes two separate analyses: but for causation and proximate causation. Whiting, 471 F.3d at 802.
A district court that does not adequately explain a sentence commits procedural error. United States v. Leiskunas, 656 F.3d 732, 738 (7th Cir. 2011). Further, a district court errs when it fails to set out “explicit and clear factual findings and determinations” that form the basis of its decision. United States v. Titus, 821 F.3d 930, 934 (7th Cir. 2016). Thus, we have remanded cases when the district court improperly applied the causation analysis and when the district court did not address causation at all. Whiting, 471 F.3d at 802; Domnenko, 763 F.3d at 776-77.
The words “reasonable foreseeability” and “proximate cause” and their variants do not appear in the sentencing *689 transcript. At most, the district court held that Burns’s conduct was not reasonable in that he should have verified the investments instead of trusting what USARMS’s owners told him about the Turkish bonds. That his conduct was unreasonable, however, does not necessarily mean that he proximately caused the victims’ loss. Without a clear ruling on proximate causation, the district court erred.
Because the court did not discuss proximate causation, Burns’s substantial rights were affected. The district court used the $3.3 million loss number to enhance Burns’s sentence by 18 levels. The 18-level enhancement increased Burns’s sentencing guideline range from 12-18 months to 108-135 months. When a district court improperly applies a sentencing enhancement, the defendant’s substantial rights are affected. See United States v. Doss, 741 F.3d 763, 768 (7th Cir. 2013); Leiskunas, 656 F.3d at 738; cf. United States v. Tovar-Pina, 713 F.3d 1143, 1148 (7th Cir. 2013) (holding that, when a district court judge increases a sentence but fails to explain why, the error is not harmless and.requires remand for resentencing). Even though the district court may determine that Burns proximately caused the actual loss on remand, there is a reasonable probability that the outcome will be different because the government did not claim that Burns knew about the Ponzi scheme. For that reason alone, the- Ponzi scheme can reasonably be seen as a superseding cause that breaks the causal chain.
Finally, an error that significantly increases a defendant’s prison sentence without a proper factual basis seriously impugns the fairness, integrity, and public reputation of judicial proceedings. Doss, 741 F.3d at 768. Thus, the district court committed reversible plain error.

b. Restitution

Courts lack inherent' authority to order restitution and may do so .only when authorized or required by statute. United States v. Locke, 643 F.3d 235, 246 (7th Cir. 2011). The Mandatory Victims Restitution Act (“MVRA”) requires courts to order restitution if the offense of conviction “involves as an element a scheme, conspiracy, or pattern of criminal activity.” 18 U.S.C. § 3663A(a)(2). Both wire fraud and mail fraud include as an element a scheme to defraud. United States v. Daniel, 749 F.3d 608, 613 (7th Cir. 2014).
The MVRA has a proximate cause requirement. The statute defines a victim to whom restitution must be paid as “a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.... ” 18 U.S.C. § 3663A(a)(2); see also Robers v. United States, — U.S. -, 134 S.Ct. 1854, 1859, 188 L.Ed.2d 885 (2014); United States v. Clark, 787 F.3d 451, 463 (7th Cir. 2015). As already discussed, the district court did not address proximate causation during sentencing.
That error affects Burns’s substantial rights. A defendant’s substantial rights are affected when he may have been required to pay more in restitution than he owes. United States v. Allen, 529 F.3d 390, 397 (7th Cir. 2008); United States v. Randle, 324 F.3d 550, 558 (7th Cir. 2003) (“In requiring [the defendant] to pay several thousand dollars in restitution, without a statutory basis for doing so, the error affects [the defendant’s] substantial rights.”). Under the current restitution order-, Burns may have to pay more than he owes because, without a proximate cause analysis, there is no way of knowing if he caused the victims’ full loss. Moreover, the fairness, integrity, and public reputation of judicial proceedings are harmed when the district court acts without statutory authority. *690 Locke, 643 F.3d at 248; Allen, 529 F.3d at 397; Randle, 324 F.3d at 558.
Ordering restitution beyond what Burns may have caused exceeds the statutory authority that Congress has given courts and requires reconsideration.
c. Forfeiture
The parties dispute whether forfeiture should be calculated under 18 U.S.C. § 981(a)(2)(A) or (B). Under either section, the defendant must forfeit “proceeds”; the difference in the subsections is in how “proceeds” is defined. Put simply, “proceeds” may mean either receipts (in subsection (A)) or profits (in subsection (B)).
We need not decide that issue here because it is irrelevant. Bums does not argue that the district court should have reduced the forfeiture award by his direct costs in providing the financial services (which would be allowed under (B) but not (A)); rather, Burns argues that the district court erred by awarding forfeiture based on the victims’ loss and not his gain. Forfeiture is based on the theory that a defendant should not profit from his illegal activity, and thus, forfeiture orders reflect the defendant’s gain as opposed to the victims’ loss. United States v. Webber, 536 F.3d 584, 603 (7th Cir. 2008); United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003). For our purposes then, the only issue is whether the district court ordered forfeiture in the amount that Burns received from his fraud.
It did not. Neither side alleges that Burns actually gained $3.3 million from his fraud. Burns alleges that he did not profit at all from his fraud. According to Burns, he received a salary and a guaranteed bonus under his employment contract. His compensation didn’t depend on his performance, and therefore, he didn’t gain from his fraud. Alternatively, Burns argues that, even if he profited from his fraud, he could at most -be required to forfeit the money he actually received for his work ($220,000 over 17 months). The government’s only argument that Burns should forfeit $3.3 million is “that a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant.” United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012).
At sentencing, the district court only tangentially addressed what Burns profited from his fraud. And the limited discussion reveals that even the district court did not believe that Burns made $3.3 million from his fraud. The district court stated that Burns “induced [the victims] to part with millions of dollars, which went to your company and which you indirectly benefit-ted, through your salary and through your bonuses — the generous bonuses you received.” (R. 174 at 89-90.)
Further, the government’s rebanee on Contorinis is misguided. In its brief, the government ignored the court’s admonition that it was “not aware of, and the government has not cited, any decision standing for the proposition that a defendant may be required to forfeit funds never acquired by him or someone working in concert with him.” Contorinis, 692 F.3d at 147. In its brief in support of its motion in limine, the government stated that “Defendant is not alleged to have knowingly participated in the Ponzi scheme that happened at USA Retirement.” (R. 104 at 4.) The government’s response to Burns’s post-trial motions specified that “Defendant is alleged by himself to have told material lies to investors that caused them to part with their money and invest it with USA Retirement.” (R. 125 at 9) (emphasis in original). The government cannot disclaim alie- *691 gations that Burns acted in conceit with USARMS’s owners but then seek a forfeiture order based on what USARMS’s owners made from the-Ponzi scheme.
That error affects Burns’s substantial rights because he was ordered to pay more than he gained from his fraud. See Locke, 643 F.3d at 248; Allen, 529 F.3d at 397; Randle, 324 F.3d at 558. The fairness, integrity, and public reputation of judicial proceedings require that we exercise our authority to correct an error that would cause Burns to forfeit over $3 million more than he gained from his fraud.
III. Conclusion
The jury verdict is supported by sufficient evidence, so we AFFIRM Burns’s conviction. The district court erred, however, in using the full amount of the victims’ loss to enhance Burns’s sentence and ordering restitution without determining that Burns proximately caused that loss. Moreover, the district' court also erred by ordering forfeiture in the full amount of the victims’ loss without determining that Burns actually gained that full amount from his fraud. Accordingly, because the errors were plain, we must, and hereby do, VACATE Burns’s sentence, restitution order, and forfeiture order, and REMAND those matters for' resentencing proceedings consistent with this opinion.

. Intended loss is irrelevant in this case because the district court based its enhancement on the victims' actual loss.