NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2017*
Decided February 21, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-2296

| | |
|---|---|
| ERNEST FRANKLIN CLARK, *Petitioner-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 15-CV-726-JPG |
| UNITED STATES OF AMERICA, *Respondent-Appellee*. | J. Phil Gilbert, *Judge*. |

**O R D E R**

Ernest Clark, a federal prisoner serving 162 years after he and his cohorts robbed six banks at gunpoint in the Milwaukee area, appeals from the denial of his collateral challenge to his convictions, *see* 28 U.S.C. § 2255. The district court granted a certificate of appealability authorizing Clark to pursue in this court a claim that appellate counsel was constitutionally ineffective for not raising issues about the government's theory of accomplice liability and the presiding judge's physical absence after the jury that heard

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(c).

Clark's case began deliberating. The certificate of appealability also authorizes Clark to pursue a claim that his multiple convictions under 18 U.S.C. § 924(c) are void in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). We reject his contentions and affirm the judgment.

During the first five robberies, Clark forced a bank employee to retrieve money from the vault while an accomplice held a gun on other employees. But in the final robbery, Clark carried a gun himself. Milwaukee police caught him several months after that robbery, and he served time in state custody before a federal grand jury indicted him on six counts of armed bank robbery, 18 U.S.C. § 2113(a), (d), and six counts of using a firearm in furtherance of a crime of violence, *id*. § 924(c).

Clark represented himself with help from appointed standby counsel. After a four-day trial, a jury found him guilty on all counts. Judge Gilbert, from the Southern District of Illinois, presided over the trial in Milwaukee by special designation, *see* 28 U.S.C. § 292(b). But the judge experienced back problems during the trial, so after hearing closing arguments and instructing the jury, he returned home to Illinois to seek medical assistance. He arranged for Judge Clevert, who at that time was the chief judge of the Eastern District of Wisconsin, to sit in the courtroom and assist him in managing any issue that might arise. Judge Gilbert remained available by phone and in fact resolved telephonically an issue concerning the jury's desire to review video evidence. When the jury rendered its verdicts, Judge Gilbert presided via speakerphone with Judge Clevert's assistance. Several months later, Judge Gilbert sentenced Clark (in person in Milwaukee) to a total of 1,951 months' imprisonment: 1,800 months for the six § 924(c) charges (the minimum possible because Clark already had a prior conviction under § 924(c), and each new one carried a consecutive, statutory minimum of 300 months) and 151 months for all of the bank robberies (the low end of the guidelines range for those charges).

Clark's standby counsel was appointed by this court to represent him on direct appeal. In that case the lawyer raised novel issues under both the Speedy Trial Act, *see* 18 U.S.C. § 3161(b), and the Interstate Agreement on Detainers, *see* 18 U.S.C. app. 2, § 2, relating to the period Clark was in state custody before his arraignment on the federal charges. *See United States v. Clark*, 754 F.3d 401, 405–10 (7th Cir. 2014). Counsel also challenged a warrant authorizing the use of a buccal swab to obtain Clark's DNA. *Id*. at 410. We affirmed Clark's convictions.

Clark then filed the § 2255 motion underlying this appeal. He argued that his appellate counsel was ineffective for not raising a litany of issues, including Judge Gilbert's absence from the courthouse at the end of the trial and the government's reliance on a theory of aiding and abetting to obtain convictions on five of the six § 924(c) counts. Clark later sought permission to supplement his § 2255 motion with an additional claim: that the § 924(c) convictions must be vacated on the ground that after *Johnson*, the bank robberies underlying those convictions no longer qualify as "crimes of violence" under § 924(c).

Judge Gilbert denied the § 2255 motion and the motion to amend, reasoning that all of Clark's existing claims lack merit and that the proposed *Johnson* claim would be futile. But Judge Gilbert granted a certificate of appealability authorizing Clark to contest the denial of his motion to add a *Johnson* claim, and also to pursue his theories that appellate counsel was constitutionally ineffective in not raising issues about the judge's absence after the jury began deliberating and the government's theory of accomplice liability for the § 924(c) charges.

We first address whether Judge Gilbert should have allowed Clark to add a claim under *Johnson*, which was decided (and made retroactive by *Welch v. United States*, 136 S. Ct. 1257 (2016)) after he filed his § 2255 motion. Each of the § 924(c) counts alleged that Clark had used a gun in furtherance of a crime of violence, i.e., a specific armed bank robbery. The statute defines "crime of violence" to mean an offense that either "has as an element the use, attempted use, or threated use of physical force against the person or property of another" or else "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). We recently held that the second of these two options, known as the "residual clause," is unconstitutionally vague in light of *Johnson*'s holding that a similar residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), was unlawfully vague. *United States v. Cardena*, 842 F.3d 959, 995–96 (7th Cir. 2016) (citing *Johnson*, 135 S. Ct. at 2557). So to be a crime of violence, armed bank robbery must qualify under the surviving "elements clause," *see* 18 U.S.C. § 924(c)(3)(A).

Clark argues that it does not, but we held to the contrary in *United States v. Armour*, 840 F.3d 904, 907–09 (7th Cir. 2016). In that case, which involved a botched attempt to rob a bank at gunpoint, we rejected the precise argument Clark makes here: that robbery by "intimidation" (one of the ways armed bank robbery can be committed) does not have as an element the use, attempted use, or threatened use of physical force. *See id*. at 908–09. We concluded that "intimidation means the threat of force," *id*. at 909,

and thus even an attempt to commit an *unarmed* bank robbery is a crime of violence under the elements clause. For that reason Judge Gilbert was correct in concluding that adding a *Johnson* claim would be a futile endeavor.

Next we consider Clark's theories of ineffective assistance by appellate counsel. To prevail on a claim that appellate counsel's performance was constitutionally deficient, Clark must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were "significant and obvious" and "clearly stronger" than the issues counsel *did* raise. *See Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013). And Clark also would have to establish that counsel's choice to exclude the additional issues prejudiced him, i.e., that it's reasonably probable that including the omitted issues would have changed the outcome of his direct appeal. *See Stallings v. United States*, 536 F.3d 624, 627–28 (7th Cir. 2008). We conclude that Clark has not met this demanding standard for either theory of ineffective assistance that Judge Gilbert certified for appeal.

First, Clark argues that appellate counsel should have raised a claim about Judge Gilbert's absence while the jury deliberated and when it returned its verdicts. But Clark had not objected to Judge Gilbert monitoring the deliberations from his home district via speakerphone, so our review would have been for plain error. *See United States v. Olano*, 507 U.S. 725, 733–36 (1993); *United States v. Burns*, 843 F.3d 679, 687–88 (7th Cir. 2016).

It is not clear to us that, under the circumstances, the procedure followed by Judges Gilbert and Clevert was erroneous at all. *See United States v. Kone*, 307 F.3d 430, 441–43 (6th Cir. 2002) (concluding that substitution of second judge to monitor deliberations and receive verdict via speakerphone after presiding judge left district to attend judicial conference was not structural error that could relieve defendant, who did not object to arrangement, from having to establish prejudice from presiding judge's absence); *United States v. Arnold*, 238 F.3d 1153, 1154–56 (9th Cir. 2001) (concluding that presiding judge did not err by leaving courthouse to attend judicial conference during jury deliberations and, without objection from any party, handling jury question over phone); *cf. Riley v. Deeds*, 56 F.3d 1117, 1119–21 (9th Cir. 1995) (concluding that judge's "complete abdication of judicial control" during jury deliberations amounted to structural error). And without a *plain* error, this argument would have been weak on appeal, *see United States v. Cureton*, 845 F.3d 323, 326 (7th Cir. 2017) (noting that defendant loses on plain-error review if question is "at least debatable"), especially since Clark does not even suggest that he was prejudiced. *See Burns*, 843 F.3d at 687–88.

Judge Gilbert ably dealt with a jury question over the phone and "presided telephonically" over Judge Clevert's physical receipt of the jury's verdicts, *see United States v. Brown*, 757 F.3d 183, 191–93 (4th Cir. 2014) (concluding that judge's absence during deliberations was harmless because "nothing else of note" happened while judge was gone); *Kone*, 307 F.3d at 443. Moreover, the evidence used to convict Clark was overwhelming. *See United States v. Solon*, 596 F.3d 1206, 1211–13 (10th Cir. 2010) (concluding that judge's absence during closing arguments was harmless because nothing irregular happened and government's case against defendant was "strong"). We therefore agree with Judge Gilbert that an appellate claim on this ground would not have been clearly stronger than the novel issues that counsel *did* raise on appeal. *See Blake*, 723 F.3d at 888.

The same is true concerning the other theory of ineffective assistance certified for appeal. Clark insists that appellate counsel should have raised a claim under *Rosemond v. United States*, 134 S. Ct. 1240, 1248–52 (2014), which holds that a defendant must have had "advance knowledge" that a gun would be used in furtherance of a crime of violence or drug trafficking offense in order to be convicted under § 924(c) on a theory that he aided and abetted another's use of the gun. In the first five robberies, Clark retrieved money from the vault while an accomplice held a gun on bank employees. (During the final robbery, Clark himself carried a gun into the bank.) Clark argues that the government failed to prove that he knew before entering the banks that the accomplice would be armed. Because *Rosemond* was decided while Clark's direct appeal was pending, the jury was not instructed on this requirement of advance knowledge.

But as Judge Gilbert recognized, the possibility that the jury never considered this subject would not have supported reversal. As the judge noted, once Clark saw his confederate use a gun in the first robbery, he obviously knew that a gun would be used in later robberies, *see Rosemond*, 134 S. Ct. at 1250 n.9, making this argument preposterous as to all but, arguably, the first robbery. And as in *United States v. Lawson*, 810 F.3d 1032, 1041–42 (7th Cir. 2016), there is no way that the jury could have believed, even as to the first robbery, that Clark lacked advance knowledge that a gun would be used. Ample evidence, including surveillance footage and testimony from bank employees and Clark's accomplices, showed that he knew of and endorsed a plan for someone who entered the bank to be armed. In fact, the driver of the getaway car in the first five robberies testified that he and Clark specifically had recruited their armed accomplice to "hold down the floor" of the bank at gunpoint so that Clark could enter the vault instead of simply taking money from teller drawers. Just as in *Lawson*, we would have reviewed Clark's claim for plain error because he never objected to the jury

instructions about aiding and abetting, and we would have concluded that the *Rosemond* error in this case did not prejudice him. *See id*. at 1041–42. Appellate counsel therefore was not deficient for forgoing this claim. *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

That resolves the matters included in the district court's certificate of appealability, but Clark also points to a number of additional ways in which, he says, appellate counsel rendered ineffective assistance. Although we may treat Clark's inclusion of these additional contentions as an implicit request to expand the scope of the certificate, *Rittenhouse v. Battles*, 263 F.3d 689, 693 (7th Cir. 2001); *cf. Peterson v. Douma*, 751 F.3d 524, 529–30 (7th Cir. 2014) (noting that court should only rarely allow parties to modify certificate of appealability by implication), we decline to do so. We have examined the remainder of Clark's theories of appellate counsel's ineffectiveness, and we conclude—for substantially the reasons given by Judge Gilbert—that none of these theories merits further discussion.

The judgment of the district court denying the § 2255 motion is AFFIRMED.