In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 21-1481 & 21-1935

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BUSTER HERNANDEZ,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:17-cr-183 — **Tanya Walton Pratt**, *Chief Judge.*

———————————

ARGUED FEBRUARY 24, 2022 — DECIDED AUGUST 17, 2022

———————————

Before ROVNER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Buster Hernandez was sentenced to 75 years' imprisonment after pleading guilty to a yearslong sextortion scheme involving hundreds of victims, many of them minors. One aspect of his sentence was mandatory restitution, which the district court ordered in the amount of $10,000 for each of eleven minor victims—eight accounted for in the initial judgment, and three more added in an amended

judgment when it surfaced that they had been omitted from the first.

Hernandez now challenges his $110,000 restitution order on two grounds. He first contends that the entire order must be reversed because the government shirked its duty to prove his victims' losses. And second, in the event his first argument fails, he maintains that the restitution order must be reversed at least as to the final three victims because the judgment was not properly amended under Federal Rule of Criminal Procedure 35(a). But our criminal justice system is adversarial, and Hernandez failed to raise these issues with the district court. Because we believe this omission was part of Hernandez's sentencing strategy, we deem his appellate arguments waived. We therefore affirm the judgment of the district court without reaching the merits of Hernandez's claims.

I

A

From 2012 to 2017, Hernandez engaged in an online campaign of terror, coercing hundreds of victims—most often minors—to produce sexually explicit images and videos of themselves. Typically, he began with a private message to a potential victim on social media conveying that he already possessed explicit photos of them. Should that individual respond, Hernandez's ploy was then to demand that they create sexually explicit materials of themselves and send them to him, in exchange for which he promised to delete all such materials afterward. But of course, this sextortion didn't end once Hernandez's initial demands were met. Instead, he continued making demands of a victim until they refused to comply, at which point he often posted the sexually explicit

materials he had already extorted from his victim online or anonymously sent those materials to the victims' friends and families. He also threatened to murder, rape, kidnap, and injure his victims and their friends and family and encouraged some victims to kill themselves.

Hernandez worked hard to cover his tracks, including by using at least 169 different email and social media accounts under countless aliases, as well as by deploying sophisticated technological measures to avoid detection. For example, he used a computer system that lacked a hard drive, which ensured that no data would be left on his device once powered off. To the extent that he did keep longer-term copies of the videos and images he extorted from his victims, those were maintained on encrypted external hard drives. And all of his extortion schemes were carried out with the aid of the Tor Network, an anonymity network designed to mask its user's IP address so that their geographic location is virtually impossible to trace.

His schemes began to unravel in December 2015, when one minor victim's mother discovered extortionist text messages from Hernandez to her child. Hernandez responded by threatening to kill the victim and her mother and to kidnap the victim's minor sibling, as well as by disseminating online the images he had previously extorted from that victim. And he only upped the ante in the months that followed, threatening to commit bombings and mass murder at two public high schools, a shopping mall, and a large retailer all located near this victim's home.

Even with state and federal law enforcement determined to bring him to justice, Hernandez's technological skills allowed him to evade capture for another 20 months. But in

mid-2017, the law finally caught up with Hernandez, after one of his minor victims allowed law enforcement officials to use the victim's online identity to send an (innocuous) video to Hernandez containing surreptitiously embedded code that revealed his IP address. With Hernandez's IP address at last unmasked, his physical location became apparent, and he was brought into custody on August 3, 2017.

The evidence of Hernandez's crimes mounted following his capture, and his list of charges grew accordingly. By April 2019, he faced a 41-count Superseding Indictment which charged him with production of child pornography; coercion and enticement of minors; distribution and receipt of child pornography; threatening to use explosive devices; extortion; threats to kill, kidnap, and injure other persons; witness tampering; obstruction of justice; and retaliation against the victims and witnesses of his crimes. Staring down this mountain of charges, Hernandez chose to forego trial, instead pleading guilty to all 41 counts (without a plea agreement) on February 6, 2020.

B

Before Hernandez's sentencing hearing, an initial Presentence Investigation Report disclosed that the government would seek $10,000 in restitution each for eight of Hernandez's minor victims, which 18 U.S.C. § 2259(b)(2)(B) and (c)(3) make mandatory for child pornographers like Hernandez. Hernandez objected to an offense-level enhancement proposed by the PSR, but said nothing about restitution, even after the Probation Office submitted an amended PSR which again indicated the government would seek $10,000 for each of eight minor victims.

While awaiting sentencing, Hernandez also submitted a sentencing memorandum, which sought a 30-year sentence (his prospective Guidelines Range, by contrast, recommended life imprisonment). But he never submitted a filing taking issue with the PSR's mention of restitution, even after the government later indicated it had identified three additional minor victims for whom it would seek restitution. At sentencing, the government said nothing on restitution, while Hernandez referenced it once, arguing that the 30-year sentence he sought would provide substantial time to pay restitution while working inside the Bureau of Prisons.

Knowing from the PSR that the government sought $10,000 for each minor victim, the district court ultimately stated an intended sentence including $10,000 in restitution for each of eight victims, totaling $80,000 (an amount which omitted the three victims disclosed in one of the government's filings, mentioned above). The district court then asked whether there was any reason not to impose the intended sentence and, both parties having answered that question in the negative, proceeded to impose that sentence, including 75 years' imprisonment, supervised release thereafter, and $80,000 in restitution.

Within a week, it became apparent that the three minor victims disclosed in one of the government's post-PSR filings (for whom restitution was, again, mandatory, and set by statute at a minimum of $3,000) had been omitted from the initial judgment. The government therefore moved to amend the judgment to include $10,000 in restitution for each of these three victims as well, with the motion indicating that Hernandez did not object. Given the unopposed motion, the district court entered an amended judgment including $10,000 for all

three, meaning $110,000 total when added to the $80,00 previously ordered. Hernandez then appealed to our court, raising challenges to his restitution order for the first time.

## II

Hernandez presses two issues on appeal. He argues first that the district court erred in ordering $10,000 in restitution for each of eleven minor victims because the government provided no evidence of those victims' losses. And he argues next that the district court erred in amending the judgment to include $10,000 in restitution for each of three victims initially left out, contending that this was not the sort of error Federal Rule of Criminal Procedure 35(a) contemplates correcting through an amended judgment. We consider each argument in turn.

## A

Hernandez urges us to reverse the district court's $110,000 restitution order because the government provided no evidence of his victims' losses. Of course, he admits, these eleven victims will get some restitution, even on remand—the law demands some minimum recompense for Hernandez's victims. See 18 U.S.C. § 2259(b)(2)(b) and (c)(3) (making at least $3,000 per victim in restitution mandatory for those convicted of trafficking in child pornography). But he thinks that the government, having failed to provide proof of loss at sentencing, is barred by our precedents from submitting that evidence on remand, see *United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004) and *United States v. Wyss*, 147 F.3d 631, 633 (7th Cir. 1998), meaning his victims should each get the $3,000 statutory minimum and not a penny more.

Yet whatever the merits of that argument, Hernandez must first overcome his failure to raise it before the district court. Arguments not properly preserved during sentencing are either forfeited or waived. *United States v. Burns*, 843 F.3d 679, 685 (7th Cir. 2016). The former permits limited appellate review; the latter precludes it. *Id*. Although the difference between the two is hard to delineate, finding waiver—the intentional relinquishment of a known right—is appropriate where a defendant's district-court omission was a matter of strategy. *Id.*

Identifying such a strategic choice "requires some conjecture on our part in light of the record viewed as a whole." *Id.* at 686 (citation omitted). In making this assessment, "we consider express statements of waiver, as well as evidence of acquiescence." *United States v. Mansfield*, 21 F.4th 946, 954 (7th Cir. 2021). And a chief sign of acquiescence is inaction in the face of notice. See *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) (finding waiver where PSR provided defendant advanced notice of proposed criminal history calculation, yet defendant failed to object before or during sentencing hearing); *Mansfield*, 21 F.4th at 954–55 (finding waiver where PSR incorporated defendant's arrest history, providing advanced notice that history might be considered, yet defendant did not object until appeal).

There was ample notice here, and silence in the face of it. The initial PSR was filed in the district court docket nearly one year before Hernandez's sentencing hearing, and it did not hide the ball when it came to restitution. Over a span of more than a dozen pages, the PSR recounted the horrors that Hernandez had inflicted on his victims over the years and expressed that the government had identified eight of them—

victims 1 through 6, 11, and 12 (all minors)—on whose behalf it would seek $10,000 in restitution each.

It's evident that Hernandez closely reviewed the initial PSR. He responded to it by filing a detailed objection to a proposed base-offense-level enhancement. But he said nothing about restitution—a telling omission that we have previously found points to waiver. See *Mansfield*, 21 F.4th at 954–55 (finding waiver where defendant made multiple sentencing-relevant filings after receiving the PSR yet failed until appeal to challenge the PSR's accuracy or inclusion of disputed arrest history).

This silence continued when the final PSR again indicated that the government would seek $10,000 in restitution for each of eight victims, even as Hernandez submitted a sentencing memorandum arguing vigorously for a 30-year sentence against the possibility of life imprisonment. And when the government later identified three other minor victims entitled to restitution (their identification having been delayed by Hernandez's sophisticated efforts to conceal his online sextortion scheme), Hernandez never said a word about the proof of loss needed to seek such restitution.

At sentencing, Hernandez continued this pattern of "missed opportunities." *Id.* at 955. During the hearing, the government said nothing about restitution; Hernandez, for his part, said little. His counsel assured the district court that they had reviewed the PSR, presumably including its indication that the government would seek $10,000 in restitution per victim. Yet Hernandez's sole reference to restitution at the sentencing hearing was to argue that the 30 years' imprisonment that he sought "w[ould] provide significant time for restitution to be paid" as he worked inside the Bureau of Prisons.

Given the near-total oversight of the issue, it's unsurprising that the district court proceeded to state an intended sentence which included $10,000 in restitution per victim—exactly what the PSR said would be sought—as well as 75 years' imprisonment. Even here, however, Hernandez had a chance to object—the district court made clear that both parties would have "a final opportunity to state any legal objections before sentence [wa]s finally imposed." Yet when asked at the close of the sentencing hearing whether there was "any reason[] … why [the] sentence should not be imposed as stated," Hernandez's counsel disclaimed any further objections.

To be sure, even affirmative non-objection is not per se waiver. See *United States v. Robinson*, 964 F.3d 632, 641 (7th Cir. 2020) ("[A] lawyer's statement that a defendant has no objection to the PSR does not *automatically* constitute a waiver … ."). But we do "consider it in light of the surrounding circumstances and the record as a whole to determine whether counsel and the defendant made a knowing and intentional decision" not to object. *Id.* (citation omitted). And the government here has proffered compelling strategic reasons why Hernandez may have chosen not to do so, reasons which also favor finding waiver. See *Mansfield*, 21 F.4th at 955 (finding waiver where government proffered convincing strategic reasons for defendant's failure to raise a sentencing objection with the district court).

For starters, Hernandez had no income or assets to his name at the time of sentencing. On that basis, the district judge concluded that he could not pay even a Guideline range fine in association with his conviction. This by itself was a good reason for Hernandez not to contest restitution—no

matter whether he was ordered to pay $10,000 per victim or $10 million, he would remain equally unable to pay.

Moreover, nitpicking over the precise recompense owed to and harm suffered by his victims could have undermined Hernandez's other, more effort-worthy sentencing arguments. Based on the severity of Hernandez's crimes, the advisory Sentencing Guidelines calculation recommended life imprisonment, a penalty which the government forcefully sought. But Hernandez asked for a dramatically different outcome, seeking a downward variance to 30 years. Defense counsel sought this comparatively light sentence in part based on a nuanced portrayal of Hernandez as a Jekyll-and-Hyde figure, acknowledging the seriousness of his crimes but emphasizing his lack of prior criminal history, acceptance of responsibility, and own traumatic upbringing. We imagine—and think Hernandez did, too—that an argument seeking to discount his victim's losses for restitution purposes would have been deeply unpalatable to a district judge being asked for extraordinary lenience based in part on Hernandez's acceptance of responsibility.

Hernandez dismisses the government's proffered strategic reasons, arguing that it would make little strategic sense to give up his restitution arguments in order to obtain an effective life sentence of 75 years when he would have been better off with less restitution and an actual (instead of de facto) life sentence. But recall that Hernandez sought a downward variance to 30 years, which, given that he was 27 years old when first taken into custody, would likely have been decades shorter than a sentence of life imprisonment. To be sure, Hernandez got 75 years, not the 30 that he wanted. But a failed gambit can still be a rational one, and after-the-fact regret

doesn't mean that Hernandez lacked good strategic reasons for being selective in his choice of sentencing arguments.

Fighting waiver, Hernandez argues that he couldn't have been expected to object to the restitution amount when the PSR offered no evidence of loss and the government showed up unexpectedly empty-handed to his sentencing hearing. As he sees it, there was nothing tangible to object to until the district court indicated that it would order the $10,000 in restitution per victim that the government requested, at which point Federal Rule of Criminal Procedure 51(a) made it unnecessary for him to object to an already-decided ruling. But that misconstrues what happened: the district court stated an *intended* sentence including $10,000 per victim, which it did not impose until after giving both parties an opportunity to object—an opportunity Hernandez did not take.

"The sentencing in the district court is the main event," and sentencing arguments are often a use-it-or-lose-it affair, a reality which reflects our system's foundation in adversarial principles. *United States v. Lewis*, 823 F.3d 1075, 1081–82 (7th Cir. 2016). In this case, there were no surprises at sentencing with respect to restitution. *Id.* at 1082. From his guilty plea and forward, Hernandez knew to a certainty that he would pay restitution—the law made it mandatory, and subject to a statutory minimum. And the PSR warned him nearly a year in advance that the government would seek $10,000 per victim, with later filings confirming the number of compensable minor victims at eleven. Hernandez had every opportunity to raise that issue and failed to do so. Having notice of what will come and electing not to object "shows intent to waive [a] right, not ignorance or neglect of [that] right." *Staples*, 202 F.3d at 995. We find such an intent here, and so deem Hernandez's

argument that restitution was improperly entered without evidence to have been waived. This holding does not, however, condone a lack of factual basis in determining a restitution amount. See 18 U.S.C. § 3664(e) (the government bears the burden of proving victim losses by a preponderance of the evidence before mandatory restitution may be ordered); *United States v. Eaden*, 37 F.4th 1307, 1313–14 (7th Cir. 2022) (on plain error review, reversing portions of restitution order that were entered without evidentiary support).

B

Hernandez also says that it was improper to amend the judgment to include restitution for minor victims 13, 17, and 20, who were originally omitted from the judgment, despite having recounted to the district court how they had suffered at Hernandez's hands. He insists that the omitted restitution—which was set at a mandatory minimum of $3,000 per victim by 18 U.S.C. § 2259—wasn't the sort of error subject to correction through an amended judgment under Federal Rule of Criminal Procedure 35(a).

But there was waiver here, clear as day. The government's motion requesting an amended judgment stated that Hernandez did not object, and Hernandez doesn't deny on appeal that this was the case. It's true that (as Hernandez points out) *United States v. Jaimes-Jaimes* says we shouldn't find waiver where, given an ambiguous record, finding waiver would compel the conclusion that counsel had performed deficiently in failing to object. 406 F.3d 845, 848 (7th Cir. 2005). But *Jaimes-Jaimes* took that view in the face of an *ambiguous* record, in which defense counsel disclaimed any objection to the PSR's Guidelines calculation only in general terms. *Id*. The record here, by contrast, is anything but ambiguous. The

government moved to amend the judgment in one and only one respect—including restitution for victims who were overlooked at sentencing. In response to that single-issue request, Hernandez's counsel denied having any objection. There's nothing ambiguous about disclaiming objection to so precise a request; to the contrary, that's textbook waiver. Cf. *id.* (finding forfeiture, not waiver, where defendant's trial counsel disclaimed objection to PSR's proposed Guidelines calculation generally, rather than to a specific offense-level enhancement underpinning that calculation).

In discussing *Jaimes-Jaimes*'s holding at oral argument, Hernandez's counsel suggested that Hernandez's lawyer in the district court may have performed deficiently by failing to object to the late-added restitution. But whether that is true is a question for a later day. Under *United States v. Strickland*, "counsel's strategic decisions are presumed to be competent," *United States v. Flores*, 739 F.3d 337, 340 (7th Cir. 2014) (citing 466 U.S. 668 (1984)), and that presumption ordinarily "cannot be overcome without an evidentiary hearing" not available on direct appeal, *id.* For that reason, raising ineffective assistance on direct appeal is imprudent, *id.* at 341, and it would be equally imprudent for us to engage with that issue when Hernandez has not pursued it.

AFFIRMED